**People of the State of Illinois, Appellee, v. Samuel Morgan, Appellant.**

**Gen. No. 52,194.**

First District, Fourth Division.

July 17, 1968.

Harold Turner and Sheldon Golding, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John F. Ward, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Soliciting for a prostitute. [1]

---

[1] Ill Rev Stats 1965, c 38, § 11-15(a). Any person who performs any of the following acts commits soliciting for a prostitute:

. . .

(2) Arranges or offers to arrange a meeting of persons for the purpose of prostitution; . . .

Committee Comments: The following two subsections then expand the concept of solicitation to include the essential activities of a middle-man who might not initiate the suggestion—but whose participation in arranging the activity is such as to be vital to the engagement. Thus, in subsection (a)(2) the person who arranges or offers to arrange a meeting of persons for purposes of

JUDGMENT: After a bench trial the defendant was found guilty and sentenced to thirty days in the House of Correction and fined $50.

POINTS RAISED ON APPEAL: Defendant was not proved guilty beyond a reasonable doubt, and defendant was entrapped by the arresting police officers.

EVIDENCE: The evidence introduced by the State was that on March 2, 1966, at approximately 4:30 a. m., Sgt. William Malone of the Chicago Police Department, went to a hotel at 176 North Clark Street, where he asked the desk clerk, a Mr. Purcelliers, if a man named Sam was around. When the defendant, Sam Morgan, came down Sgt. Malone asked him "if he would fix me up"; the defendant said he could but that the Sergeant would first have to check into a room. The two then went up in the elevator and the Sergeant asked the defendant what the cost would be and was told $50. The defendant then took the Sergeant to the room and said the girl "would be there." A few minutes later a girl (now known as Julie Davis) entered the room and said she would have sexual intercourse with the Sergeant for $50. The officer gave her $50; she disrobed, and was arrested.

The defendant testified in his own behalf that on the day in question he was employed as a bellhop and elevator operator at the Astor Hotel, 176 North Clark Street; that Officer Malone asked him to pick out a room for him, and he suggested room 544, adding that that floor had been newly decorated; that they went on the elevator to the fifth floor and no more was said between them until they reached the room, when the officer said he had been in the hotel the previous summer. The

---

prostitution is covered. This would cover the situation of an elevator operator or bellhop in a hotel who establishes contact between a patron and a prostitute who is living in the hotel or who will visit the patron's room if summoned.

437

defendant testified that at no time did he offer to send a girl to the officer, nor did he receive any money to send a girl. On cross-examination he stated he had known Julie Davis as a guest in the hotel for a couple of days. Later he testified that he knew her only from six o'clock Tuesday morning and had never seen her before that. He also testified that he did not see her on the Wednesday morning in question.

Julie Davis testified on behalf of the defendant that she had lived in the Astor Hotel for about one week at the time of her arrest; that she was on her way to her room when she walked past the room occupied by Sgt. Malone; that the door was open and he motioned her to come in; that when she went in he offered her $50 to go to bed with him; that she took the $50, disrobed and was arrested. She testified that she knew the defendant was the bellhop and that she had seen him once or twice before. When asked if she had seen him in the morning of her arrest her answer was, "I may have, I could not say no."

 OPINION: The argument of the defendant in this court that he was not proved guilty beyond a reasonable doubt, essentially involves a determination of the credibility of the witnesses testifying at the trial. It is so well settled as to require no citation of authorities that a determination of the credibility of the witnesses in a bench trial rests upon the trial judge, and that his finding will not be disturbed in the Appellate Court unless it is so unsatisfactory or unreasonable as to raise a serious doubt of defendant's guilt. People v. Reaves, 24 Ill2d 380, 183 NE2d 169; People v. Boney, 28 Ill2d 505, 192 NE2d 920. This was not the case here. The finding of guilty was adequately based on the evidence.

 As to the defense of entrapment, there is no entrapment where the law enforcement officer merely provides an opportunity for the commission of a crime

by one who is already so disposed.[2] "The distinction that must be drawn is between the inducement of an otherwise innocent person and the apprehension through lawful artifice of an individual already engaged in criminal activity." People v. Lewis, 26 Ill2d 542, 545, 187 NE2d 700. See also our discussion of this subject in People v. Washington, 81 Ill App2d 162, 167–171, 225 NE2d 673. Where the defense of entrapment is not urged in the trial court, as is the situation in the instant case, it is not available on appeal. People v. Redding, 28 Ill2d 305, 192 NE2d 341. Furthermore, the defense in this case is incompatible with entrapment and is therefore a conclusive bar to this court's consideration of the defense of entrapment as set out in People v. Calcaterra, 33 Ill2d 541, 213 NE2d 270, where the court said at page 546:

> "The defense of entrapment, however, is not available to an accused who, like defendant, denied having committed or participated in an unlawful act. People v. Outten, 13 Ill2d 21."

See also People v. Shaw, 89 Ill App2d 285, 294, 233 NE 2d 73.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.

---

[2] Ill Rev Stat 1965, c 38, § 7–12. Entrapment. A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated.