THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM EARL HENRY, Defendant-Appellant.

First District (1st Division)   No. 61124

Opinion filed April 5, 1976.—Rehearing denied May 25, 1976.

Irwin L. Frazin, of Chicago (Jody C. Weiner, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Linda Ann Miller, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

William Earl Henry was found guilty of burglary in violation of section 19—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 19—1) in a jury trial and was sentenced to a period of two to six years in the State penitentiary. The defendant appeals contending that: (1) the court erred in denying the defendant's motion to suppress his alleged confession because the confession was neither voluntarily given nor a product of a knowing and intelligent waiver of the defendant's right to counsel; and (2) the State failed to prove the defendant guilty of burglary beyond a reasonable doubt.

Officer Werner of the Chicago Heights Police Department, the arresting officer, testified that at approximately 2:30 a.m. on March 29, 1972, he received a radio message in his patrol car that the silent alarm system at the Nagle Pumps Company had been activated. Officer Werner and his partner, Officer Duff, proceeded to Nagle Pumps, located at 1249 Center Avenue in Chicago Heights, Illinois. Officer Elmer Boudreau of the Chicago Heights Police Department also proceeded there after receiving a similar radio message. After arriving at Nagle Pumps, Officer Werner observed some movement from within the building. He proceeded to the front of the building and heard a shot fired. The shot was a warning shot fired by Officer Boudreau, already on the scene, who had observed a person fleeing from the shrubbery in front of the building. That person, later identified as Johnny Edwards, was apprehended and placed under arrest by Officer Boudreau.

Upon arriving at the front of the building, Officer Werner testified that he observed a second person "rolling" out of a front window into the nearby bushes. Werner ordered the person out of the shrubbery and placed him under arrest. The person placed under arrest by Werner was later identified at trial as the defendant, William Earl Henry.

After the defendant was placed in the squad car, Werner returned to

the front window from which he had observed the defendant exit. The window was open, Werner testified, the putty was out, and there were scratch marks on the window frame and lock. There was a glove and a large screwdriver outside the window and a crowbar on the desk just inside the window. Officer Boudreau testified that this window was approximately three feet long and three feet wide. Both he and Officer Werner crawled through that window to enter the building. Boudreau testified that he believed the window was large enough for him to "roll" through it, but he and Werner had crawled through it when entering. Inside the building, Officer Werner testified, desks were disarranged, papers were thrown about and a typewriter was found on the floor in the hallway. Boudreau testified that the desks had been "ransacked" and papers thrown about.

Officer McLaughlin, an investigator for the Chicago Heights Police Department, testified that he went to Nagle Pumps to investigate the incident about 2:50 that morning. He observed paint chipped from the frame of the window Werner and Boudreau had previously observed and saw a screwdriver and a black glove just outside the window and a pry bar on the desk inside the window. Fingerprint tests on the screwdriver and pry bar proved inconclusive, McLaughlin testified.

The defendant testified that he was in the vicinity of Nagle Pumps with Johnny Edwards for a crap game with two other persons the defendant referred to as Jake and. his fiancee. The four left the game and drove around for a half hour or so. Jake and his fiancee got into an argument, so the defendant and Johnny Edwards got out of the car and started walking back toward where the defendant's wife's car was parked. As they were walking past Nagle Pumps, the defendant testified, a police car with no lights on approached. Edwards stopped, but the defendant kept walking. The defendant heard a shot fired and stepped to the side of the building. Although the defendant testified he was not in any bushes, he testified that an officer ordered him to come out of the bushes. He was then placed under arrest and transported to the Chicago Heights Police Station.

Officer McLaughlin testified that he first interviewed the defendant at approximately 5:10 that morning at the Chicago Heights Police Station. It was stipulated by the defense that the defendant had been advised of his *Miranda* rights. At this time the defendant denied any involvement in a burglary at Nagle Pumps. At approximately 2:15 p.m. Officer McLaughlin again interviewed the defendant in the presence of a detective named Rutger and Joyce Segneri, a police stenographer. At this time the defendant made a statement in their presence which the stenographer took down. The defendant stated that when he was driving past Nagle Pumps he suggested "checking it out to see if there was a petty cash box." The statement continued that he and Johnny parked the car, pried open a

window with a screwdriver, entered and looked around for a cash box, which they did not find. Seeing lights on the street, they exited the building, when they were placed under arrest. The stenographer who took the statement verified it at trial.

The defendant admitted at trial that he had made this statement to the police. However, he stated that the statement was in fact false, and that he had only made the statement because the officers present told him that he had better cooperate or he would never be able to get back his wife's car they had just impounded because the storage charge they would impose would be higher than he could pay. The defendant did not sign the statement.

Officer McLaughlin, who had done all the talking when the defendant made his confession, denied making any threat. He stated that while he had advised the defendant that the defendant's wife's car had been found, he said he did not tell the defendant that the car would be returned if the defendant would make a statement. Officer McLaughlin denied making any promises or using any coercion in any way to elicit the statement. It was stipulated by the defense that Officer Rutger, who was also present when the defendant's confession was taken, would testify substantially the same as Officer McLaughlin.

After the trial began, the defendant moved to suppress his confession. After hearing the testimony concerning the circumstances surrounding the confession, the court denied the defendant's motion. The court, in commenting on its reasons for denying the defendant's motion, stated that it was primarily a "matter of credibility of the witnesses." The defendant's confession was thereafter entered into evidence. After the close of all the evidence, the jury returned a verdict of guilty.

■■ The defendant's first contention is that it was error for the court to admit the defendant's confession into evidence. The defendant's basic argument is that the statement was not voluntarily given, but was a product of a threat to withhold his wife's car unless the defendant cooperated. While a statement made to police by a suspect, in order to be admissible, must be made voluntarily and must not be a product of any compulsion or inducement, a reviewing court will not overturn a trial court's determination that the statement was made voluntarily unless the determination was against the manifest weight of the evidence. (*People v. Nemke*, 46 Ill. 2d 49, 263 N.E.2d 97; *People v. Hester*, 39 Ill. 2d 489, 237 N.E.2d 466; *People v. Bunting*, 18 Ill. App. 3d 99, 309 N.E.2d 316.) In determining the admissibility of such statements, the credibility of the witnesses is a matter for the trial court, and its determination in this regard will not be overturned unless palpably erroneous. *People v. Dagge*, 10 Ill. App. 3d 726, 295 N.E.2d 336; *People v. Noonan*, 5 Ill. App. 3d 1109, 284 N.E.2d 446.

While the defendant testified that he had made his statement only in response to a threat by the police that they would make it difficult for his wife to get back her automobile, Officer McLaughlin denied making any such statement. It was a question of whom to believe, and the trial court believed Officer McLaughlin. We do not find the court's determination to be palpably erroneous.

■■ The defendant next contends that his confession should not have been admitted into evidence because the State failed to call all the material witnesses to the confession. While Officer McLaughlin and stenographer Segneri were called to the stand, the third person present when the statement was taken, Officer Rutger, was not called to testify. The defense, however, made no objection to the State's failure to call Officer Rutger and in fact stipulated that Officer Rutger would testify substantially the same as Officer McLaughlin had testified. An objection to the State's failure to call all material witnesses where the voluntariness of a confession is at issue must be made in the trial court (Ill. Rev. Stat. 1973, ch. 38, par. 114—11(d)), and the State's failure to call such witnesses will not be considered on review where such an objection has not been made. (*People v. Harper*, 127 Ill. App. 2d 420, 262 N.E.2d 298.) The defendant, having failed to object to the State's failure to call a material witness to his confession and having, in fact, acquiesced in such failure by stipulating to what that witness' testimony would be, has waived the right to raise the issue on appeal.

■■ The defendant's final contention concerning the admission of his confession is that the law should require that an attorney be present when an accused makes a confession before such confession may be allowed into evidence. This is clearly not the law of Illinois. A defendant may knowingly and intelligently waive his right to have an attorney present. (*People v. Brooks*, 51 Ill. 2d 156, 281 N.E.2d 326; *People v. Johnson*, 55 Ill. 2d 62, 302 N.E.2d 20.) It was stipulated by the defendant at trial that he was fully advised of his right to counsel along with his other *Miranda* rights. After being advised of his rights, the defendant did not request an attorney. He, therefore, waived his right to have an attorney present when he made his confession.

The defendant's second major contention is that the State failed to prove the defendant guilty of burglary by competent evidence beyond a reasonable doubt. Defendant contends that there was no direct evidence that the defendant had been inside the building and no evidence that anything was taken. There was considerable evidence proving that the defendant was in the building. The defendant's confession, which we have found to have been properly admitted, stated that he and Johnny Edwards entered through a window they had pried open with a screwdriver. Officer Werner testified that he saw the defendant "roll" out

of the window upon his arrival on the scene. We find no merit in the defendant's argument that it is questionable whether it was physically possible for the defendant to roll out of the three foot by three foot window. Officers Werner and Boudreau testified they entered the building through the window, and Boudreau testified that it would have been possible for him to have "rolled" through the window although he had crawled through it in entering the building.

■■ There was no evidence that anything was removed from the building. However, the law does not require that anything be taken. It only requires a showing that the person charged with burglary had made an unauthorized entry into the building with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1973, ch. 38, par. 19—1(a); *People v. Clark*, 30 Ill. 2d 216, 195 N.E.2d 631; *People v. Morris*, 7 Ill. App. 3d 1055, 289 N.E.2d 73.) The defendant's intent to commit a theft was clear both from his confession and from the state of disarray within the building. We are of the opinion that the elements of burglary were proven beyond a reasonable doubt.

■■ The defendant also contends that the State's case depended upon inadmissible testimony concerning the existence of the pry bar found at the scene. Defendant contends that because the pry bar was never turned over to the defense before the trial, despite a comprehensive discovery motion, it was error to allow any testimony concerning the pry bar. We note, however, that the defendant raised no objection when this testimony was elicited at trial. A party waives his right to raise the admissibility of testimony if that party fails to make a timely objection to the testimony at trial. *People v. Fox*, 48 Ill. 2d 239, 269 N.E.2d 720; *People v. Ross*, 41 Ill. 2d 445, 244 N.E.2d 608; *People v. White*, 131 Ill. App. 2d 652, 264 N.E.2d 228.

Accordingly, the judgment is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.