THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DIANE HANSON, Defendant-Appellant.

Third District   No. 75-360

Opinion filed October 25, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:
Following a jury trial, defendant was found guilty of delivery of less

than 30 grams of a substance containing heroin and sentenced to 1-3 years' imprisonment. The issue presented for review is whether the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt.

John Stephens testified for the State that he had been a police officer for the Bloomington Police Department for nine years and, during 1974, was working as an undercover agent for the Multi-County Narcotics Unit. On August 8, 1974, at approximately 8:45 p.m., he was driving near the Taft Housing area off Green Street in Peoria, Illinois, looking for Martha Coates, with whom Stephens had had prior contacts. He was approached by defendant, who previously had been introduced to Stephens by Martha Coates, and was asked by defendant if he was interested in any "stuff." Defendant stated that she had quarter caps, and Stephens said he would buy five. Defendant left and returned a few minutes later with the quarter caps. After completing the purchase, Stephens drove to a prearranged location where other agents were waiting and conducted a field test on the substances, which indicated the presence of heroin.

On cross-examination, Stephens testified that on August 1, 1974, he went to the Taft Housing area and met Martha Coates, who told him that she did not have any narcotics to sell but knew a friend who did. They proceeded towards Apartment 200, 250 Green Street until Martha told Stephens to stop. Defendant approached the car, and Martha introduced defendant to Stephens, stating that defendant's name was Ann.

Stephens' report for that date described Ann as being 5'10", 140 pounds, and having blondish-brownish hair. Stephens testified that on August 8, defendant's hair was somewhat darker, but he acknowledged that his report for August 8 described her hair as blondish as opposed to the blondish-brownish description given in the August 1 report. Stephens stated that on both occasions there was adequate outside light to clearly observe defendant and that it was not dark enough to require the use of his car headlights. He was able to ascertain defendant's last name by checking the name on the mailbox for Apartment 200 at 250 Green Street and "confirmed" the last name a few weeks later by information received from David Hanson, defendant's brother. Stephens stated that his height estimate could be off 2-3 inches, but reiterated that defendant was the person known to him as Ann Hanson from whom he purchased narcotics on August 8.

Stephens further testified on cross-examination that in March, 1975, after defendant was indicted, her attorney requested Stephens to come to the courthouse for the purpose of identifying defendant as Ann Hanson. The persons present were defendant, her attorney, Stephens, and an assistant State's Attorney. Stephens identified defendant as Ann Hanson and noted that her hair was brown.

Other State witnesses established a chain of custody for the substance

which Stephens purchased, and lab tests revealed the substance to contain heroin.

Defendant testified that her name is Diane Hanson, that she had never gone by the name Ann, that she lives in Milwaukee, Wisconsin, she is 5'5" and never had blonde hair. Her natural hair color is brown, but her hair was dyed red at the time of trial, and she was wearing a brown wig.

Her family resides in Peoria, and her mother and four siblings live at Apartment 200, 250 Green Street. Her brother David does not live at that address and was incarcerated at the time of trial. She is not a friend of Martha Coates, but knows who she is only because they were in the same grade school. During the first part of August, 1974, she was in Milwaukee with her boyfriend visiting relatives and returned to Peoria in the middle of August. She denied selling heroin and stated that she first met Stephens at the courthouse confrontation.

■■ Defendant contends that the discrepancies between the descriptions in Stephens' report and her actual description, combined with the suggestive pretrial identification and her alibi testimony, leave a reasonable doubt that she was the perpetrator of the offense.

The testimony of a single witness is sufficient to convict, even though contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification. *People v. Stringer* (1972), 52 Ill. 2d 564, 389 N.E.2d 631; *People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 848; *People v. Ellis* (3d Dist. 1974), 24 Ill. App. 3d 870, 321 N.E.2d 722.

The test of whether a defendant has been positively identified turns upon whether the identifying witness had sufficient time to observe the offender at a reasonable distance and under adequate lighting. *People v. McCall* (1963), 29 Ill. 2d 292, 194 N.E.2d 222; *People v. McGee* (1st Dist. 1976), 38 Ill. App. 3d 889, 350 N.E.2d 13.

Discrepancies in the witness's testimony regarding the description of the perpetrator and the actual description of the defendant affect the witness's credibility and the weight to be given to the testimony, matters peculiarly within the jury's province. On appeal, the determination of the jury or of the trial judge sitting without a jury, will not be disturbed unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of the accused's guilt. *People v. Calhoun* (1st Dist. 1971), 132 Ill. App. 2d 665, 270 N.E.2d 450; *People v. Barnes* (1st Dist. 1969), 118 Ill. App. 2d 128, 255 N.E.2d 18.

In the instant case, Stephens acknowledged that the estimation as to height contained in his report could be off by 2-3 inches, and on the two occasions he met defendant he was sitting in his car, which could contribute to the inaccuracy. We find it inconceivable that a defendant who appears in court wearing a wig and with her hair dyed could

seriously contend that a purported discrepancy in hair color is such as to render suspect the identification testimony of Stephens.

Stephens had two separate occasions on which to view defendant and, on each occasion there was adequate light to observe clearly. The fact that defendant approached Stephens' car offering to sell some "stuff" on August 8 emphasizes the fact she knew of his interest in buying drugs from the August 1 meeting. Under these circumstances, his positive, in-court identification of defendant was not so improbable, unreasonable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. The jury was not required to believe defendant's uncorroborated alibi testimony.

In a recent case involving the failure of store employees to notice defendant's missing teeth or tattoo at the time defendant allegedly cashed a check, as well as discrepancies in original descriptions as to height, this court said in *People v. Mays* (3d Dist. 1976), 38 Ill. App. 3d 182, 184-85, 347 N.E.2d 235:

> "While it is true that failure of a witness to include a certain distinctive physical characteristic in an original description of the offender may effect the credibility of the description (*People v. King* (1st Dist. 1973), 10 Ill. App. 3d 652, 655, 295 N.E.2d 258), the important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime. (*People v. Nichols* (1st Dist. 1975), 32 Ill. App. 3d 265, 268, 336 N.E.2d 194.) Where a witness makes a positive identification, precise accuracy in preliminary description is not necessary. (*People v. Ellis* (3d Dist. 1974), 24 Ill. App. 3d 870, 882, 321 N.E.2d 722.) The discrepancies, if any, go to the weight of the identification testimony and are to be evaluated by the trier of fact. *People v. Chatman* (1st Dist. 1975), 32 Ill. App. 3d 506, 510, 336 N.E.2d 153; *People v. Jones* (5th Dist. 1972), 4 Ill. App. 3d 888, 891, 282 N.E.2d 273."

With regard to the allegedly suggestive pretrial identification, we note that the defendant and her attorney requested to meet with Stephens to see if he could identify her. The State's Attorney agreed; the meeting was held; and Stephens stated that defendant was the person who delivered heroin to him some seven months before. She now argues that this was a "single subject show-up" and inherently suggestive. Her contention that we should reverse because it was error for the State to accede to her request is, to put it mildly, unique and inventive but without merit. The record, which shows that Stephens previously had two opportunities to view defendant, demonstrates in any event that Stephens' in-court identification was independent of and untainted by the pretrial confrontation. *People v. Chatman* (1st Dist. 1975), 32 Ill. App. 3d 506, 336 N.E.2d 153.

Upon review of the record, we believe there is sufficient evidence to prove defendant's guilt beyond a reasonable doubt and find no reason to disturb the jury's verdict.

Accordingly, the judgment of conviction of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.