THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALTHEA JOHNSON, Defendant-Appellant.

First District (3rd Division)    No. 60740

Opinion filed May 10, 1978.

184

Edward M. Genson and Sam Adam, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, Althea Johnson, was charged with prostitution for agreeing to perform an act of deviate sexual conduct for money. (Ill. Rev. Stat. 1975, ch. 38, par. 11—14(a)(2).) The statute provides:

"Section 11—14. Prostitution.) (a) Any person who performs, offers or agrees to perform any of the following acts for money commits the act of prostitution:

1. Any act of sexual intercourse; or
2. Any act of deviate sexual conduct.

(b) Sentence.

Prostitution is a Class A misdemeanor." Ill. Rev. Stat. 1975, ch. 38, 11—14.

After a bench trial she was found guilty, fined $100, and sentenced to serve 8 days in the Cook County House of Correction. The appellate court reversed the conviction (*People v. Johnson* (1975), 34 Ill. App. 3d 38, 339 N.E.2d 325), concluding that there was a fatal variance between the charge in the complaint and the proof adduced at trial. The supreme court reversed the appellate court's decision (*People v. Johnson* (1976), 65 Ill. 2d 332, 357 N.E.2d 1166), and remanded the case to this court to consider the other issues the defendant raised in her appeal.

The defendant now contends: (1) the prostitution statute is unconstitutional, either on its face or as applied to her case, (2) she was not proved guilty beyond a reasonable doubt, and (3) the trial court erred in denying her motion for a new trial in view of new evidence which she discovered after the trial. We reject these contentions and affirm the defendant's conviction.

The complaint against the defendant, made out by Chicago Police Department vice investigator Andrew Murcia, charged that she "committed the offense of prostitution (deviate sexual conduct) in that she *agreed* to perform an act of deviate sexual conduct, namely oral copulation with Andrew Murcia, for the sum of $50.00 U.S.C." (Emphasis added.)

At trial, Investigator Murcia, the State's sole witness, testified that at about 7 p.m., dressed in civilian clothes, he was leaving his private car at 1300 North Clark Street, on his way to a part-time job at the Ambassador East Hotel. The defendant approached him and offered to perform an act of oral copulation for $50, using a word which the witness testified was street slang for an act of oral copulation. He stated that he declined the offer, but did not arrest the defendant at that time because he was alone, and it is not considered good police policy for a lone officer to arrest a woman. He said that after he watched the defendant enter a car driven by a man, he followed them in his own car to approximately 3153 North Broadway. At this point, Investigator Murcia asked a squad car to stop the car in which the defendant was riding, and the defendant and her companion, William Kraus, were arrested and taken to police headquarters. Investigator Murcia testified that although the defendant

began to talk about a lawsuit after her arrest, he did not initiate the conversation or ask her if she wanted to talk about a lawsuit.

The testimony of the defendant and Kraus established that Kraus had known the defendant for 6 years and owned a company which employed the defendant. Their testimony was that on the night in question Kraus picked her up at her apartment and the two of them drove to a restaurant in the 3100 block of North Broadway. The two then were stopped by two policemen, ordered out of their car, and arrested by Investigator Murcia.

The defendant denied that the incident Investigator Murcia described ever took place, or that she had walked at 1300 North Clark at any time that day, or that she ever had seen Investigator Murcia before her arrest at 3100 North Broadway. She also testified that after her arrest, Investigator Murcia said to her, "I understand you are involved in a lawsuit. You want to talk about it?"

Kraus testified that on the evening in question, he was on a date with the defendant. He agreed with her version of what happened that evening, and said that she did not have a conversation with Murcia prior to the arrest.

The defendant moved for a new trial, alleging that the defense counsel she retained after the trial discovered new evidence demonstrating that Investigator Murcia testified falsely at trial. Specifically, the defendant's new counsel sought to introduce evidence that on the date of the defendant's arrest, Investigator Murcia was not due to begin work at the Ambassador East Hotel until 9 p.m., which also had been his starting time for several previous days. The trial judge ruled that this evidence did not warrant a new trial.

The defendant's first contention is that the statute defining the crime of prostitution in this State is unconstitutional on its face, or was unconstitutionally applied to her. Essentially, the defendant takes a scattershot approach, arguing that the statute violates (i) her due process rights under the fourteenth amendment, by being unconstitutionally vague; (ii) her first amendment rights to freedom of speech and association; and (iii) her first, third, fourth, fifth, ninth and fourteenth amendment rights of privacy. These defenses are not novel. Similar ones were raised by persons charged with violating prohibitions against prostitution in *State v. Price* (Iowa 1976), 237 N.W.2d 813; *State v. Hicks* (Del. Super. 1976), 360 A.2d 150; and *United States v. Moses* (D.C. App. 1975), 339 A.2d 46.

The defendant's first constitutional attack is that the prostitution statute is unconstitutionally vague because it would make a "prostitute" of a woman who offers, performs or agrees to perform sexual acts in overt or tacit exchange for an expensive dinner or a concert, an exchange the defendant contends is part of an unwritten social code. The defendant

argues that the overbroad language of the statute would apply to women who perform such sexual acts in return for gifts or evenings out.

■■ This argument is unsound. The committee which drafted the statute specifically limited its language to apply only to sex acts performed for "money," instead of for "any valuable consideration." (Ill. Ann. Stat., ch. 38, par. 11—14, Committee Comments-1961, at 456 (Smith-Hurd 1972).) And case law has indicated that an offer or agreement to receive money, rather than, for example, a fur coat or a night at the opera for sexual favors is essential to a prostitution conviction. (See *People v. Castanza* (1968), 92 Ill. App. 2d 419, 426-27, 236 N.E.2d 251.) Thus, the Illinois prostitution statute applies only to those who offer, perform or agree to perform a sexual act for money; the statute does not discourage exchanges of sexual acts as a part of social companionship or for gifts of material goods. The statute, then, is not an overbroad or vague attempt to regulate sexual conduct in general, or even sexual acts which result, for whatever motives, from ordinary social situations. (See *People v. Superior Court of Alameda County* (1977), 19 Cal. 3d 338, 562 P.2d 1315, 138 Cal. Rptr. 66.) Because the statute provides an ascertainable standard of conduct, is specifically directed at a defined evil, and is not so vague as to inhibit the exercise of constitutionally-protected freedoms, it is not void for being overbroad. *Baggett v. Bullitt* (1964), 377 U.S. 360, 12 L. Ed. 2d 377, 84 S. Ct. 1316; *Beauharnais v. Illinois* (1951), 343 U.S. 250, 96 L. Ed. 919, 72 S. Ct. 725; *Snyder v. Board of Trustees* (N.D. Ill. 1968), 286 F. Supp. 927, 934.

We also reject the defendant's claims that the statute takes away her constitutional rights to freedom of speech and freedom of association under the first amendment. The defendant contends that her right to freedom of speech permitted her to speak to Investigator Murcia in the way she did. Even the essential and basic freedom provided by the first amendment which is cherished as a cornerstone of our liberty is not absolute. In *United States v. O'Brien* (1968), 391 U.S. 367, 377, 20 L. Ed. 2d 672, 680, 88 S. Ct. 1673, the Supreme Court stated that when "speech" and "nonspeech" elements are combined in the same course of conduct, governmental statutory regulation of speech is justified, "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest * * * unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

The Illinois statute meets the *O'Brien* tests. There is an important and substantial governmental interest in eliminating acts of prostitution because of the potential prostitution has for causing crime and spreading disease as noted below. And the State's interest in regulating prostitution

is unrelated to the suppression of free speech, for prostitution can be effectively combated only by prohibiting spoken offers and agreements to perform acts of prostitution. The complainants in prostitution cases are often, as in this case, police officers who have been solicited. If an offer standing alone were not prohibited conduct, the police could not be complainants in prostitution cases unless they first actually performed acts of intercourse with the persons they were arresting—a practice which no doubt would create a great deal of marital dissatisfaction and public criticism. Thus, the incidental restriction on speech here is not greater than is essential to further the State's interest, because the regulatory enactment is "carefully and narrowly aimed" at the forbidden conduct. *Gregory v. City of Chicago* (1968), 394 U.S. 111, 118, 22 L. Ed. 2d 134, 139, 89 S. Ct. 946.

In addition, the Supreme Court has repeatedly stated that speech is not constitutionally protected when it is part of a course of criminal conduct. In *Giboney v. Empire Storage & Ice Co.* (1949), 336 U.S. 490, 498, 93 L. Ed. 834, 841, 69 S. Ct. 684, the Supreme Court said:

> "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now."

And in *Cox v. Louisiana* (1965), 379 U.S. 536, 554, 563, 13 L. Ed. 2d 471, 484, 491, 85 S. Ct. 453, the court, recognizing the necessity for regulating types of speech aimed at furthering anti-social or criminal purposes, said:

> "* * * The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. * * * The examples are many of the application by this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited."

Illinois courts also have recognized the danger of a purported exercise of free speech which is actually intended to circumscribe freedom by ruling that words may be prohibited where they are intended to be part of a course of criminal action. (See *Beauharnais*, at 266.) In *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 224 N.E.2d 793, the court upheld an ordinance which prohibited distribution by real estate brokers of statements designed to induce owners to sell their property because of the entry into neighborhoods of minority races. The court ruled that such statements were not protected by freedom of speech, since "[w]here speech is an integral part of unlawful conduct, it has no constitutional protection." *Chicago*, at 552-53.

■■ The defendant in the present case was found by the trier of fact to have offered to perform an act of oral copulation for money. Thus, her

spoken words were designed to lead immediately to an illegal act. Her first amendment rights did not give her a license in the guise of free speech to use words which were an integral part of a course of criminal conduct.

■■ Turning next to the defendant's claim that she was denied her right to associational freedom, the defendant has not demonstrated how she was prevented from or penalized for associating with anyone. In *Griswold v. Connecticut* (1965), 381 U.S. 479, 483, 14 L. Ed. 2d 510, 514, 85 S. Ct. 1678, the Supreme Court wrote:

> "The right of 'association' * * * is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means. Association in that context is a form of expression of opinion* * *."

Thus, if the statute in question banned the defendant from joining a group of prostitutes, or from attending a meeting of prostitutes, or prevented her from receiving foodstamps (*Moreno v. United States Department of Agriculture* (D.C. Cir. 1972), 345 F. Supp. 310) or speaking publicly about the merits of legalizing prostitution because she was charged with being a prostitute, the defendant might have a legitimate first amendment associational freedom claim. But here the defendant was not prevented from talking with, or walking with, Investigator Murcia. She was merely prohibited from propositioning Investigator Murcia to engage in sexual relations with her for money. The defendant was penalized for associating with Investigator Murcia in only one specified and prohibited way—for offering, performing or agreeing to perform, an act of sexual intercourse with him for money. Thus, to argue that the defendant's first amendment freedom of association was abridged by the statute demeans the essence of that fundamental freedom, and on its face is as demonstrably unsupportable as would be the argument that freedom of association encompasses the right to gather together to plan or commit crime.

The defendant's final constitutional argument is that her prosecution invaded her constitutionally protected right of privacy. A person's sexual life is normally highly personal and appropriately protected from unwarranted governmental intrusion. But the defendant's conduct here was utterly at odds with her claim that her privacy was impinged upon. In this case, the evidence established that the defendant approached Investigator Murcia on a public street and offered to perform a sexual act for $50. There was nothing private about her relationship with him, or about the place where she made her offer. Although several recent decisions have ruled that certain private conduct, such as the use of contraceptives (*Griswold*), possession of obscene materials in one's own

home (*Stanley v. Georgia* (1969), 394 U.S. 557, 22 L. Ed. 2d 542, 89 S. Ct. 1243), or a decision to have an abortion in the early stages of pregnancy (*Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705), may not be prohibited by criminal law, none of these holdings is relevant to what happened here, where a citizen's right to privacy was not at stake. Similar arguments regarding the right of privacy of a person engaged in prostitution were considered and rejected in *United States v. Moses*, at 50; *State v. Price*, at 817-18; and *State v. Hicks*, at 151-52.

■■ And even if we accept the dubious position that the defendant's actions were encompassed, and so protected, by her constitutional right to privacy in sexual matters, the State legislature was acting within its proper scope of authority in limiting this "right" because of the State interest in safeguarding the public health, safety and welfare through a law prohibiting prostitution. Although many persons have urged that the State's interest in protecting the public by preventing venereal disease, cutting down prostitution-related crimes of violence and theft, and protecting the integrity and stability of family life could better be served by legalizing and regulating prostitution, rather than by prohibiting it, such an argument should be settled by the legislature, rather than by this court. The Illinois statute forbidding prostitution is a rational attempt to protect valid State interests. As such, it is a valid exercise of the legislature's authority, and must be upheld. See *Roe v. Wade*, at 155; *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 315 N.E.2d 9; *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 355, 291 N.E.2d 807.

As the Supreme Court noted in its implicit approval of anti-prostitution statutes in *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 68 N. 15, 37 L. Ed. 2d 446, 463 N. 15, 93 S. Ct. 2628, 2641 N. 15, "The state statute books are replete with constitutionally unchallenged laws against prostitution." In seeking to legitimize her conduct by wrapping herself in the concepts of free speech, freedom of association and right of privacy, the defendant debases these noble and fundamental legacies of our constitutional heritage. The defendant's challenge to the constitutionality of the Illinois law prohibiting prostitution must be rebuffed. See *United States v. Moses; State v. Price; State v. Hicks.*

■■ The defendant's second contention, that she was not proved guilty beyond a reasonable doubt, is also unconvincing. Here, the trial judge heard the testimony of the defendant and her employer, balanced it against the testimony by Investigator Murcia, and chose to believe the latter's version of the incident. We cannot conclude that the evidence against the defendant here was so palpably unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt, and so require reversal. *People v. Hubbard* (1973), 55 Ill. 2d 142, 147, 302

N.E.2d 609; *People v. Hanson* (1976), 42 Ill. App. 3d 592, 594-95, 356 N.E.2d 447.

Investigator Murcia's testimony was clear and credible; the defendant approached him and solicited him for the price of $50. It verges on the absurd to seriously argue, as defendant does, that she was only offering to kiss the police officer; his testimony, as an experienced member of Chicago's police department, as to the meaning of the precise word Investigator Murcia testified the defendant used in soliciting him, in the context of this case was eminently more believable. And both the defendant's intent to perform an act of prostitution, as well as the meaning of the word the defendant used, could be inferred from the surrounding circumstances by the trier of fact. See *People v. Morgan* (1968), 98 Ill. App. 2d 435, 240 N.E.2d 286; *People v. Masterson* (1967), 79 Ill. App. 2d 117, 127, 223 N.E.2d 252.

Because the positive testimony of a single credible witness is sufficient to convict a criminal defendant, even if that testimony is, as here, contradicted by the accused, the trier of fact was free to believe the police officer rather than the defendant. This court should not substitute its judgment on disputed evidence of the type presented here for that of the trial judge, who heard the evidence, observed the witnesses and arrived at a plausible and reasonable conclusion. *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1; *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182; *People v. Henry* (1976), 37 Ill. App. 3d 813, 347 N.E.2d 447.

■■ Similarly, we must reject the defendant's final argument, that the trial court erred in denying her motion for a new trial. The evidence the defendant's new counsel claimed to have discovered after her trial never was demonstrated to exist; in the post-trial motion hearing, arguments were advanced that the police officer was not scheduled to begin work until 9 p.m., but no actual evidence, such as affidavits or records, was presented to establish the veracity of this contention. And even if the evidence did exist, its significance here was at best of minor value to the defendant's case as a possible impeachment of Investigator Murcia's credibility. Generally, newly discovered evidence which merely discredits a witness is not a ground for a new trial. (*Kaster v. Wildermuth* (1969), 108 Ill. App. 2d 288, 247 N.E.2d 431.) But even if it were, in this case there is nothing contradictory in the officer's statements that he was on his way to work at 7 p.m., and the possibility that his job did not begin until 9 p.m. Despite the inroads other value systems are supposed to be making in the work ethic, many people still arrive at their jobs early. And the officer may well have planned to do something—eat dinner, read the papers, or visit a friend—in the 2 hours before he arrived at work. In addition, the alleged new evidence here could have been discovered before trial with due diligence by the defendant: a subpoena of the

records of the hotel in which Investigator Murcia was employed would have produced this information.

■■ Generally, the defendant bears the burden of establishing the right to a new trial (*People v. Williams* (1976), 39 Ill. App. 3d 449, 350 N.E.2d 135; *People v. Hughes* (1973), 11 Ill. App. 3d 224, 296 N.E.2d 643), and when the alleged right is based on a claim of newly discovered evidence, the trial court has the discretion to grant or refuse the request for a new trial. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288; *People v. Estes* (1976), 37 Ill. App. 3d 889, 346 N.E.2d 469.) Here, the very existence of the new evidence was not proved, the new evidence—even if it existed— was of minimal significance to the outcome of the case, and due diligence easily could have produced the alleged evidence before trial. Thus, the defendant did not show her right to a new trial, and the trial court did not abuse its discretion in denying her motion.

Judgment affirmed.

JIGANTI, P. J., and McNAMARA, J., concur.