# Illinois Official Reports

## Appellate Court

---

### *People v. Conroy*, 2019 IL App (2d) 180693

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHERRY J. CONROY, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-18-0693 |
| Filed<br>Rehearing denied | November 12, 2019<br>December 10, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 17-CM-1359; the Hon. Alexander F. McGimpsey, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John R. Bowley, of Chicago, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Hutchinson and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant, Sherry J. Conroy, was convicted of one count of prostitution. 720 ILCS 5/11-14(a) (West 2016). On direct appeal, defendant concedes that her conduct meets the statutory definition of the offense, but she argues that section 11-14(a) of the Criminal Code of 2012 is unconstitutional. Defendant contends that (1) adults have a fundamental substantive due process right to engage in private, consensual sexual activity, without governmental intervention or fear of criminal liability, and (2) section 11-14(a), as applied to her, impermissibly infringes on that right. Defendant attempts to characterize the right affected as a fundamental right to privacy, when in fact she is asserting a constitutional right to the commercial sale of sex. No such right exists, and section 11-14(a) is rationally related to the legitimate governmental interest in prohibiting prostitution. We affirm.

¶ 2      **I. BACKGROUND**

¶ 3      The underlying facts are undisputed. Officer James Peterson of the Addison Police Department testified that, on June 8, 2017, he and 8 to 10 detectives and uniformed officers conducted an undercover "sting" operation at a hotel to investigate prostitution. The officers rented two rooms with an adjoining door. They searched the Internet for advertisements that were "sexual in nature," and they found one on backpage.com. Officer Peterson called the telephone number listed in the ad and spoke with defendant. The officer and defendant exchanged text messages and arranged to meet at the hotel. Defendant arrived at Officer Peterson's room while the other officers waited in the adjoining room.

¶ 4      Defendant and Officer Peterson exchanged greetings, and defendant sat on the bed. Defendant told Officer Peterson that "it would be $250" for an hour of "exotic massage." She placed a condom on the bed and took off her shirt. Officer Peterson removed all of his clothing and reclined on the bed. Defendant touched Officer Peterson's sex organ, and he signaled the officers next door to storm the room and arrest defendant. Defendant was charged with a misdemeanor violation of section 11-14(a).

¶ 5      Defendant filed a motion to dismiss the charge on constitutional grounds. The trial court denied the motion, citing *People v. Williams*, 349 Ill. App. 3d 273 (2004), which rejected a similar challenge to section 11-14(a). Following a bench trial, defendant was found guilty, sentenced to 12 months' court supervision, and ordered to pay court costs and to undergo testing for sexually transmitted diseases and HIV. This timely appeal followed.

¶ 6      **II. ANALYSIS**

¶ 7      **A. Levels of Constitutional Scrutiny**

¶ 8      Section 11-14(a) provides that

> "[a]ny person who knowingly performs, offers or agrees to perform any act of sexual penetration as defined in Section 11-0.1 of this Code for anything of value, or any touching or fondling of the sex organs of one person by another person, for anything of value, for the purpose of sexual arousal or gratification commits an act of prostitution." 720 ILCS 5/11-14(a) (West 2016).

Defendant concedes that her conduct violated the statute, but she challenges its constitutionality.

¶ 9 Statutes are presumed constitutional, and the burden of rebutting that presumption is on the party challenging the statute to clearly demonstrate a constitutional violation. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). A court has a duty to uphold the constitutionality of a statute when reasonably possible, and therefore, a court will resolve any doubt in a statute's construction in favor of the statute's validity. *Napleton*, 229 Ill. 2d at 306-07. The constitutionality of a statute is subject to *de novo* review. *People v. Devenny*, 199 Ill. 2d 398, 400 (2002).

¶ 10 The first step in evaluating a claim that a statute violates a constitutional guarantee is to determine the nature of the right purportedly infringed by the statute. *Napleton*, 229 Ill. 2d at 307; *People v. Cornelius*, 213 Ill. 2d 178, 203 (2004). The classification of the right affected dictates the level of scrutiny used to determine whether the statute comports with the constitution. *Napleton*, 229 Ill. 2d at 307.

¶ 11 Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test, under which a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Napleton*, 229 Ill. 2d at 307.

¶ 12 In contrast, where a classification is made based upon race or national origin, or the constitutional right is "fundamental," the presumption of constitutionality is weaker, and a court must subject the statute to the more rigorous requirements of a strict scrutiny analysis. *Napleton*, 229 Ill. 2d at 307. To withstand strict scrutiny, the measures employed by the government must be necessary to serve a compelling state interest and must be narrowly tailored thereto, *i.e.*, the government must use the least restrictive means consistent with the attainment of its goal. *Napleton*, 229 Ill. 2d at 307.

¶ 13 Our supreme court has held that fundamental rights include the expression of ideas (*i.e.*, freedom of speech), participation in the political process, travel among the states, and privacy with regard to the most intimate and personal aspects of one's life. *Napleton*, 229 Ill. 2d at 307-08.

¶ 14 A third tier of constitutional review, known as intermediate scrutiny, lies between the deferential rational basis review and strict scrutiny. Intermediate scrutiny extends to legislative classifications based upon gender and illegitimacy and to those that cause certain content-neutral, incidental burdens to speech. To withstand intermediate scrutiny, a legislative enactment must be substantially related to an important governmental interest. *Napleton*, 229 Ill. 2d at 308.

¶ 15 B. *Williams*

¶ 16 On appeal, defendant classifies her right to engage in "commercial sex" as a fundamental right to privacy with regard to the most intimate and personal aspects of one's life. She asserts that section 11-14(a) does not withstand strict scrutiny because the statute is not necessary to serve a compelling state interest and is not narrowly tailored to that interest.

¶ 17 A similar position was presented and rejected in *Williams*. Williams argued that section 11-14(a) prohibits conduct that is protected under the fourteenth amendment to the United States Constitution. *Williams*, 349 Ill. App. 3d at 274. Williams asserted that the proscribed conduct is private consensual sexual activity between adults and that it is therefore protected from unwarranted governmental interference. The Appellate Court, Third District, characterized the issue as not involving a fundamental right or a suspect classification, which

would be subject to heightened scrutiny. The court thus applied the rational basis test. *Williams*, 349 Ill. App. 3d at 274.

¶ 18    The *Williams* court observed that Illinois courts have previously applied the rational basis test to the prostitution statute and upheld it as a valid attempt by the State to promote the legitimate governmental purpose of protecting the safety, health, and welfare of the people. *Williams*, 349 Ill. App. 3d at 274-75. For instance, in *People v. Johnson*, 60 Ill. App. 3d 183 (1978), Johnson raised several constitutional challenges to the statute, including the assertion that it violated her due process right to privacy in sexual matters. The Appellate Court, First District, upheld the statute as constitutional, due to the State's legitimate interests in enacting the statute, which included "preventing venereal disease, cutting down prostitution-related crimes of violence and theft, and protecting the integrity and stability of family life." *Johnson*, 60 Ill. App. 3d at 190. The *Johnson* court concluded that the statute was rationally related to a valid state interest. *Johnson*, 60 Ill. App. 3d at 190; see also *People v. Thompson*, 85 Ill. App. 3d 964, 968 (1980) (First District held that prohibiting offers and agreements to perform sexual acts is legitimate).

¶ 19    Consistent with *Johnson*, the *Williams* court found section 11-14(a) to be constitutional. Williams agreed to perform a sexual act in exchange for money and did not dispute that her conduct violated the prostitution statute. The court held that (1) the State has a legitimate governmental interest in proscribing the activity defined in the statute, (2) the statute was rationally related to the goal of protecting the public welfare, and (3) Williams's constitutional rights were not violated. *Williams*, 349 Ill. App. 3d at 275.

¶ 20    Like defendant in this case, Williams characterized her conduct as private sexual activity between two consenting adults. However, the court observed that "[the] activity is more aptly described as the commercial sale of sex." *Williams*, 349 Ill. App. 3d at 275. "Moreover, the drafters of the Illinois statute were careful to craft the language of the statute to distinguish between 'the prime concern' of the legislation, the business of selling sex, and private, noncommercial acts." *Williams*, 349 Ill. App. 3d at 275-76 (quoting 720 ILCS Ann. 5/11-14, Committee Comments-1961, at 448 (Smith-Hurd 2002)).

¶ 21    On appeal, defendant's strict scrutiny argument is premised on the same false equivalence between prostitution and noncommercial acts, which the *Williams* court rejected. She argues,

> "As the Supreme Court instructed in *Lawrence* [*v. Texas*, 539 U.S. 558 (2003)], the issue is never whether anal sex, or oral sex, or commercial sex or any other *kind of sex* is constitutionally protected: The issue is whether a statute which bans anal, oral, commercial or some other kind of sex unacceptably intrudes on the broader, asserted *privacy right* for adults to engage in private, consensual sexual relations without government oversight." (Emphases in original.)

Consistent with *Williams* and *Johnson*, we decline defendant's invitation to classify the right affected in a way that conflates commercial and noncommercial sexual activity. See *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992) (a decision of one district of the appellate court is not binding on other appellate districts).

¶ 22    Section 11-14(a) is not subject to strict scrutiny because it does not affect defendant's due process right to privacy. Under the rational basis test, we conclude that the government has a legitimate interest in proscribing the activity defined in section 11-14(a) and that the statute is rationally related to that interest. See *Williams*, 349 Ill. App. 3d at 275; see also *Johnson*, 60 Ill. App. 3d at 190 (the government has a legitimate interest in "preventing venereal disease,

cutting down prostitution-related crimes of violence and theft, and protecting the integrity and stability of family life"). The statute is a valid attempt by the government to protect the public welfare. See *Williams*, 349 Ill. App. 3d at 275.

¶ 23                                    C. As-Applied Challenge

¶ 24    Defendant argues that section 11-14(a) is unconstitutional as applied to her because her conduct does not involve "minors, pimping, human trafficking, or other such non-consensual activity, and flagrant conduct which occurs in public." She emphasizes that those matters are proscribed by other criminal statutes or can be redressed through civil actions.

¶ 25    An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *People v. Thompson*, 2015 IL 118151, ¶ 36. Here, defendant asserts that this case is factually distinguishable from *Williams*, which "involved highly visible, public conduct." Defendant is referring to the police officer in *Williams* working a "prostitution detail" in his car and encountering Williams walking the street. The officer offered Williams a ride, and when she entered the car, she agreed to perform a sex act for money. *Williams*, 349 Ill. App. 3d at 274.

¶ 26    Defendant implies that her privacy interest is greater than Williams's because defendant's entire encounter with Officer Peterson was concealed from public view. But Williams's conduct was not "public sex," and defendant's conduct did not occur entirely in private. The officers here searched the Internet and contacted defendant through her online advertisement. There was no evidence that the advertisement was not publicly available. Defendant claims that her business is particularly discreet, but one can imagine how a public post, searchable online, could reach a much wider audience than could a person simply walking the streets. Regardless of the degree to which the respective encounters occurred in public, each case turns on the exchange of a sex act for something of value.

¶ 27    Defendant also attempts to draw a factual distinction between her case and those involving minors and coercion, but defendant does not factually distinguish her case from most prostitution cases. The legislature is free to proscribe prostitution while also addressing other conduct that might arise from it. Simply punishing other serious offenses does not legitimize the underlying prostitution.

¶ 28                                    D. *Lawrence* and *Obergefell*

¶ 29    Like defendant in this case, Williams argued that in *Lawrence*, 539 U.S. 558, the United States Supreme Court conferred constitutional protection to prostitution. The *Lawrence* Court struck as unconstitutional a Texas statute that made it a crime for two persons of the same sex to engage in a consensual act of sodomy in the privacy of their home. *Lawrence*, 539 U.S. at 578-79. The Court specifically excluded prostitution from protected conduct. *Lawrence*, 539 U.S. at 578 ("[The present case] does not involve public conduct or prostitution.").

¶ 30    Defendant points out that the *Lawrence* Court also expressly stated that its holding "does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Lawrence*, 539 U.S. at 578. Since then, the Court has ruled that the United States Constitution requires states to give such formal recognition to same-sex marriages. *Obergefell v. Hodges*, 576 U.S. ___, ___, 135 S. Ct. 2584, 2604-05 (2015).

¶ 31    Since *Obergefell* extended constitutional recognition to same-sex marriage where *Lawrence* did not, defendant asserts that *Lawrence*'s exclusion of prostitution from its holding is also open to reexamination. Unless and until the Supreme Court chooses to extend constitutional protection to prostitution, we decline to depart from *Lawrence* and *Williams* and the distinction they draw between commercial and noncommercial sex.

¶ 32    Defendant also claims that the purpose of section 11-14(a) "is to force the State's conception of morality onto her, and nothing more." Defendant asserts that the majority in *Obergefell* "made extensive reference to the due process principles outlined in *Lawrence*, noting in particular that, under the *Lawrence* Court's approach to fundamental rights analysis, neither moral opprobrium nor mere citation to 'history and tradition' were enough to sustain a prohibition on the exercise of a constitutional right." See *Obergefell*, 576 U.S. at ___, 135 S. Ct. at 2598 (discussing *Lawrence*). However, in reaching its conclusion that same-sex couples cannot be denied the right to marry, the *Obergefell* Court found that "new insights [from the developments in the institution of marriage over the past centuries] have strengthened, not weakened, the institution of marriage." *Obergefell*, 576 U.S. at ___, 135 S. Ct. at 2596. If the *Obergefell* Court was seeking to strengthen the institution of marriage, one can hardly imagine how extending constitutional protection to prostitution would promote that goal.

## E. Public Policy

¶ 34    Finally, defendant urges this court to invalidate section 11-14(a) on public policy grounds and apply "reasoned judgment." She contends that (1) invalidation of the statute would reaffirm the importance of privacy rights; (2) certain human rights organizations advocate against laws that criminalize adult sex work; (3) her constitutional challenge is limited to her conduct and is not aimed at that involving minors, coercion, or sex trafficking; and (4) enforcement of the statute against defendant is a waste of public resources. Regardless of the accuracy and merit of defendant's points, we decline to depart from our conventional constitutional analysis.

¶ 35    Courts are ill-equipped to determine what public policy should be, so establishing public policy is a function of the legislature, not the courts. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 59 (citing *Dixon Distributing Co. v. Hanover Insurance Co.*, 244 Ill. App. 3d 837, 852 (1993)); see also *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 499 (1999) (the authority to determine appropriate public policy is vested in the legislature, not the courts). Simply put, public policy concerns are not a basis for ruling a statute unconstitutional.

## III. CONCLUSION

¶ 37    Section 11-14(a) does not violate defendant's due process right to privacy because the government has a legitimate interest in proscribing the activity defined in section 11-14(a) and the statute is rationally related to that interest. See *Williams*, 349 Ill. App. 3d at 275. Thus, we affirm defendant's conviction of prostitution under section 11-14(a).

¶ 38    Affirmed.