25 May 2000

No. 2--99--0140 

 _________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE  ) Appeal from the Circuit Court

OF ILLINOIS,                    )  of Du Page County.

) 

     Plaintiff-Appellee, )

  )

v.  )  No. 98-CF--1731                                                 )      

                                )

BLAINE GEMENY, ) Honorable

                                )  Peter J. Dockery,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE GALASSO delivered the opinion of the court:

After a bench trial, defendant, Blaine Gemeny, was convicted of unlawful communication with a witness (720 ILCS 5/32--4(b) (West 1998)).  The trial court denied defendant's motion in arrest of judgment, sentenced defendant to 30 months' probation, and denied his postjudgment motion.  Defendant appeals, arguing that (1) the indictment is void, (2) the trial court erred in admitting communications that were privileged under the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 
et
 
seq
. (West 1998)), and (3) he was not proven guilty beyond a reasonable doubt.  We agree with defendant's second contention of error.  Therefore, we reverse the judgment and remand the cause for a new trial.

The indictment alleges that, on August 27, 1998, defendant, "with the intent to deter John E. Kelly from testifying, fully and truthfully to a matter then pending in the DuPage County Circuit Court, the criminal prosecution of the defendant, did point at John E. Kelly and state: 'you're going to get it buddy.' "  Defendant did not move to quash the indictment.  The cause proceeded to a bench trial.  We summarize the proceedings there.

John E. Kelly, a domestic violence counselor with Du Page County Psychological Services, testified that in April of 1998 he met defendant and performed a psychological assessment.  The purpose of the assessment was to enable Kelly to provide defendant with domestic violence counseling that had been ordered as part of defendant's sentence in a criminal case (No. 97--DV--1803).  Kelly stated that his next contact with defendant was a message defendant left on Kelly's phone mail.  At this point, the State sought to introduce a cassette tape containing that message and two other phone messages from defendant to Kelly.  Defendant objected that the messages were privileged.  The court reserved a ruling on the objection until after the judge listened to the tape 
in
 
camera
.

Kelly continued his testimony as follows.  He had listened several times to three phone messages, which defendant left within the space of about a week.  The next time Kelly saw defendant was on August 27, 1998, in court, where Kelly had been subpoenaed to testify in a proceeding to revoke defendant's probation in case No. 97--DV--1803.  When defendant's case was called, defendant approached the bench as Kelly sat in his wheelchair against a wall 15 or 20 yards from the bench.  The case was continued.  As defendant walked past Kelly to exit the courtroom, defendant said, "You're going to get it, buddy" and kept walking.  Kelly did not react immediately.  Later that day, he testified against defendant.

On cross-examination, Kelly testified that he did not personally have a release from defendant authorizing the disclosure of any of the communications between defendant and Kelly.  Kelly added that "DuPage County has a release of information."  On redirect examination, Kelly stated that normally a client of his office must sign a release as a prerequisite to an assessment or treatment.  However, Kelly could not say that he witnessed defendant execute a release.

David Smith testified as follows.  On August 27, 1998, he was sitting in the courtroom gallery.  When Smith first saw defendant, the latter was in the gallery area, being disruptive.  Later, while the judge was still on the bench, defendant approached Kelly in a corridor between the wall and the gallery.  Smith was no more than three feet away.  Defendant pointed his finger within three or four inches of Kelly's face, looked at Kelly, and said, "You're going to get it now, buddy."  Defendant's tone of voice was "threatening."

The trial court admitted the tape of the phone messages, finding that defendant had waived his confidentiality rights by signing a release.  The trial judge also concluded that the tape was not confidential because defendant's treatment was not voluntary but ordered as part of his sentence in the criminal case. The trial court reasoned that defendant could not expect his treatment records to remain private because, to decide whether defendant had complied with his probation, the court in the criminal case could compel the disclosure of the nature of defendant's treatment and what was said during that treatment.

Defendant objected that relying on the release as a ground to admit the tape would violate a defense motion 
in
 
limine
 because the State had failed to disclose the consent form to defendant before trial.  The State responded only that, until Kelly testified that day, it had been unaware that there was a release form.  The trial court agreed with defendant and struck any evidence of defendant's consent to the release of the information on the tape.  The court still held the tape was admissible because defendant's treatment had been ordered as part of his sentence.

Defendant's evidence consisted of the report of proceedings for August 27, 1998, when he appeared 
pro
 
se
 on petitions to revoke

his probation in case Nos. 97--DV--1803 and 97--DV--2036.  After the cases were called, there was a short recess.  Defendant then admitted the probation violations and the court heard Kelly's testimony in aggravation (this testimony was not transcribed).  The court asked defendant if he had any evidence in mitigation. Defendant apologized for getting angry over the phone at Kelly.  He explained he had been upset that Kelly did not seem to understand that he could not afford the counseling program Kelly told him to use.  Defendant apologized for leaving the messages, saying that he believed they were rude, but not threatening.

The trial judge in the case at bar found defendant guilty of unlawfully communicating with a witness.  The judge explained that the messages illuminated defendant's relationship with Kelly and helped to prove that, in telling Kelly he was "going to get it now, buddy," defendant intended to deter Kelly from testifying fully and that Kelly had reason to feel threatened.  The judge also stated that Kelly and Smith were credible witnesses.

Defendant filed a motion in arrest of judgment arguing that the indictment was defective because it omitted an element of the offense, 
i.e.
, that the communication at issue was a threat of injury or damage to the property or person of any individual (see 720 ILCS 5/32--4(b) (West 1998)).  The trial court denied the motion, sentenced defendant to 30 months' probation, and denied his postjudgment motion.  Defendant timely appealed.

Defendant's first argument on appeal is that raised in his motion in arrest of judgment, that the indictment is fatally defective because it does not include the "threat" element of unlawful communication with a witness.  We agree with the State that this omission was not crucial because defendant waited until after the verdict to attack the sufficiency of the indictment. Under section 116--2(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/116--2(c) (West 1998)), a motion in arrest of judgment alleging that an indictment is defective because it does not charge an offense shall be denied if the indictment apprises the accused of "the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution out of the same conduct."  We believe the indictment met this test.

Defendant has not shown how his defense was prejudiced by the indictment's failure to state that his words were a threat to the person or property of an individual.  At trial, defendant argued and sought to demonstrate that he did not intend the words as a threat and that Kelly could not reasonably have taken them so. Also, the indictment specifies the exact words defendant used, the date on which he used them, and the witness to whom he directed them, so there is no doubt that defendant's conviction may be pleaded as a bar to future prosecution for the same conduct.

Defendant makes no effort to show prejudice as section 116--

2(c) requires.  Instead, he argues that, even though he did not attack the indictment until after the verdict, the omission of an element of the offense rendered the indictment void.  However, this assertion relies entirely on cases decided under section 116--2 as it read before August 1, 1989.  Under the old section 116--2, a trial court was required to grant a motion in arrest of judgment if an indictment did not state an offense.  Ill. Rev. Stat. 1987, ch. 38, par. 116--2.  The present statute employs a more lenient test. Defendant's argument is based on outdated authority.  The indictment was sufficient.

Defendant argues second that the trial court erred in admitting the taped phone messages at trial.  He maintains that the messages were exempt under section 10(a) of the Confidentiality Act, which provides:

"(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications."  740 ILCS 110/10(a) (West 1998).

The State responds that the messages are not "communications" as defined by the Confidentiality Act (see 740 ILCS 110/2 (West 1998)) and alternatively that several exceptions to the general rule of confidentiality apply.

As the resolution of this issue depends on the meaning of the Confidentiality Act, our task is to ascertain and effectuate the intent of the legislature.  We begin by giving the statutory language its plain and ordinary meaning.  
Lucas v. Lakin
, 175 Ill. 2d 166, 171 (1997).  When the statute's language is unambiguous, we must apply it as written.  
Sassali v. Rockford Memorial Hospital
, 296 Ill. App. 3d 80, 83 (1998).  Otherwise, we may ascertain legislative intent by considering the objectives of the law and the evils that it seeks to remedy.  
People v. Latona
, 184 Ill. 2d 260, 269 (1998).  As the meaning of a statute is a question of law, our review is 
de
 
novo
.  
Lucas
, 175 Ill. 2d at 171.

Defendant asserts that his phone messages to Kelly are "communications" that section 10(a) of the Confidentiality Act protects.  The Confidentiality Act defines a "communication" as:

"any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient.  Communication includes information which indicates that a person is a recipient."  740 ILCS 110/2 (West 1998).

There is no dispute that, when defendant left the messages on Kelly's phone mail, defendant was a "recipient" of mental health services and Kelly was his "therapist."  However, the State maintains that the messages are not privileged because they have nothing to do with the actual therapist-client relationship.  For two reasons, we do not think that the State's argument withstands scrutiny.

First, giving the words used to define "communication" their plain and ordinary meanings, we think that the messages, whatever their precise content, were made "in connection with providing mental health *** services" (740 ILCS 110/2 (West 1998)).  There is no dispute that defendant called Kelly in order to set up mental health counseling sessions.  The provision of mental health services was the reason for the calls, regardless of how defendant extemporized in seeking to get Kelly to honor his request.  Nothing in the definition of "communication" limits that term to statements made during an actual treatment session.  Indeed, in defining "communication" to include information indicating that a person is a recipient, the legislature showed its willingness to protect statements made outside the formal treatment process itself.  As the messages indicate that defendant is a recipient of mental health services, they are within the plain meaning of both the first and second sentences of the Confidentiality Act's definition of "communications."

Second, we think that the objectives of the Confidentiality Act are better served by recognizing that a client's phone messages to his therapist are "communications" under the statute.  The statutory privilege exists to encourage complete candor between patient and therapist and to provide motivation for persons who need treatment to seek it.  
Novak v. Rathnam
, 106 Ill. 2d 478, 483 (1985); 
Laurent v. Brelji
, 74 Ill. App. 3d 214, 217 (1979).  Given these objectives, it is perilous at best to try to exclude any private communications between a client and his therapist from the protection of the Confidentiality Act. The professional relationship cannot be neatly confined to what happens in formal treatment sessions; almost anything a client tells his therapist in confidence has the potential to affect the therapeutic process and its results.  Moreover, the danger that such communications could be disclosed later in court could discourage those needing help from seeking it in the first place.

We conclude that the messages at issue are "communications" that are protected by the general privilege the Confidentiality Act creates.  Therefore, we must decide whether any exemption to the statute allowed the State to introduce them.  Section 10(a) of the Confidentiality Act states that privileged communications are exempt from disclosure except as the statute provides otherwise. 740 ILCS 110/10(a) (West 1998).  However, in 
D.C. v. S.A.
, 178 Ill. 2d 551 (1997), our supreme court departed from the literal import of this language and carved out a narrow nonstatutory exemption where disclosure is required by fundamental fairness.

In admitting the taped messages, the trial court here did not rely on a specific exemption or on 
D.C.
's fundamental fairness doctrine.  On appeal, the State relies on 
D.C.
 and several exemptions the statute specifically provides.  We consider each claimed basis for admitting the tape.

The trial court held that the messages from defendant to his therapist were unprivileged because defendant had been ordered to obtain his therapy as part of his sentence in case No. 97--DV--

1803.  The court reasoned that defendant could not claim an expectation of privacy because the trial court in the criminal case would be able to compel the disclosure of what happened in defendant's treatment.  We cannot accept this reasoning.  Whether the Confidentiality Act protects particular client-therapist communications does not depend on a judicial evaluation of an expectation of privacy, but on whether the communications are exempt under the specific terms of the statute (740 ILCS 110/10(a) (West 1998)) or under the narrow judicially created exemption of 
D.C.
  Whatever the intuitive appeal of the trial court's logic, it does not establish that the messages fit within one of these exemptions.  Furthermore, we do not find the trial court's logic compelling on its own terms.  The court was correct that some of defendant's mental health records or communications would be subject to disclosure for limited purposes in the sentencing phase of the domestic violence case.  It does not follow, however, that they would or should be subject to involuntary disclosure for different reasons in a separate case.

Indeed, the Confidentiality Act establishes a policy that records or communications may be subject to disclosure in one setting yet protected from disclosure in another setting.  Section 10(a)(6) of the statute allows the disclosure of records made during treatment the recipient is ordered to undergo to render him fit to stand trial on a criminal charge, yet that section also limits that disclosure to the issue of fitness to stand trial.  740 ILCS 110/10(a)(6) (West 1998).  This legislative care in limiting permissible disclosure strongly suggests that we may not assume that eliminating confidentiality in one judicial setting means eliminating it in all settings.  Also, as defendant did not originally consent to the treatment in the earlier criminal case, it cannot be claimed that his conduct in the earlier case amounted to a waiver of the privilege in later cases.  See 
Novak
, 106 Ill. 2d at 482-85 (where client elected to use insanity defense at criminal trial, thus allowing admission of mental health records there, he waived the statutory privilege at that trial and at later proceedings).

We now consider the exemptions on which the State relies.  The first of these is section 11(ii) of the Confidentiality Act, which as pertinent here states that records and communications may be disclosed "when, and to the extent, a therapist, in his or her sole discretion, determines that disclosure is necessary to *** protect the recipient or other person against a clear, imminent risk of serious physical or mental injury or disease *** being inflicted upon the recipient or by the recipient on himself or another."  740 ILCS 110/11(ii) (West 1998).  The State claims that this section applies because the disclosure of the messages was necessary to protect Kelly against the threat defendant made against him.

The State's argument is meritless.  Section 11(ii) makes any disclosure up to the sole discretion of the therapist, not the State's Attorney.

This section clearly contemplates that when a therapist feels there is a threat of 
imminent
 risk to anyone, including the therapist, the therapist may disclose for the purpose of preventing or avoiding the injury.  This exception to the Confidentiality Act provides the therapist with the opportunity to prevent future harm or injury without legally violating the patient's rights.

The State did not present evidence that Kelly exercised discretion under section 11(ii) to disclose the taped messages because Kelly determined it was necessary to protect someone from 
imminent
 injury.  Furthermore, the State did not seek the disclosure of the taped messages to protect Kelly against an imminent threat of harm, but to prosecute and punish defendant for a threat he made long before the State sought the disclosure.  By its plain language, section 11(ii) does not apply here.

The State next invokes section 10(a)(1) of the statute, which allows disclosure "in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense."  740 ILCS 110/10(a)(1) (West 1998).  The State claims that in this case defendant introduced his mental state as an element of his defense by producing evidence and argument that the State failed to prove that he had the requisite mental state to commit the offense.

The State's argument is refuted by case law establishing that this exemption applies only when a party affirmatively places his own mental condition in issue.  
Mandziara v. Canulli
, 299 Ill. App. 3d 593, 599-600 (1998); 
Sassali
, 296 Ill. App. 3d at 83; 
Pritchard v. SwedishAmerican Hospital
, 191 Ill. App. 3d 388, 403 (1989). Thus, in 
Sassali
, we held that the respondent in a proceeding for involuntary commitment did not waive her Confidentiality Act privileges merely because, in opposing the petition, she sought to refute the petition's allegations that she was mentally unstable. We explained that, by filing the petition, the 
State
 had placed her mental condition in issue.  
Sassali
, 296 Ill. App. 3d at 83-84. Similarly, in this case, insofar as defendant's mental condition or any aspect of his services was placed in issue, it was the State that did so.  Defendant did not waive his confidentiality rights by defending against the charges.

The State next asserts that, under 
D.C.
, the statutory privilege must yield to considerations of fundamental fairness. However, the State's argument is simply that, by invoking the privilege, defendant would make it more difficult for the prosecution to prove his mental state and thus "might be able to defeat the charge against himself."  Thus, the only "unfairness" is that present any time a criminal defendant seeks to bar potentially damaging evidence on the basis of a discovery privilege or other exclusionary rule.  Any such privilege is bound to interfere with the truth-seeking process because privileges are not designed to further that end, but to protect some outside interest other than the ascertainment of truth at trial.  
D.C.
, 178 Ill. 2d at 561-62. The State would have us recognize an exemption with the potential to swallow the general rule of confidentiality.

D.C
. does not support such a result.  Rather, in 
D.C.
, the court held that, under the narrow circumstances of that case, the invocation of the privilege would be substantially unjust.  In 
D.C.
, the plaintiff sued the defendants for negligence after one of the defendants drove into him as he crossed the street.  The defendants sought to compel the disclosure of some of the plaintiff's mental health records in order to prove that, at the time of the accident, plaintiff might have been attempting suicide; proof of that fact might absolve them from liability by showing that the plaintiff was not exercising due care for his own safety.

The supreme court ruled that the privilege had to yield even though no statutory exception applied.  Crucial to the court's narrow ruling was that the party claiming the privilege was the one who had brought the suit.  He was not merely defending himself against an action to which he had been subjected.  The plaintiff could not rightly use the protections of the Confidentiality Act "as a sword rather than a shield" to prevent the disclosure of otherwise admissible evidence that might fully negate the claim he had asserted against the defendants.  
D.C
., 178 Ill. 2d at 570; see also 
Mandziara
, 299 Ill. App. 3d at 600.

Here, defendant seeks to use the Confidentiality Act only as a shield against the prosecution that the State initiated. Fundamental fairness to the State does not require that defendant surrender his statutory privilege.

The State next calls our attention to section 10(a)(6) of the Confidentiality Act, which allows the disclosure of records that are "made during treatment which the recipient is ordered to undergo to render him fit to stand trial on a criminal charge, provided that the disclosure is made only with respect to the issue of fitness to stand trial."  740 ILCS 110/10(a)(6) (West 1998).  The State argues that defendant's court-ordered treatment is "analogous" to the type of examination covered by section 10(a)(6). We do not see the relevance of this observation even if it is true. The plain language of section 10(a)(6) shows it has no application here, and the Confidentiality Act does not allow us to carve out nonstatutory exemptions merely because they would resemble those the legislature has seen fit to create.

Finally, the State asks us to remand the cause for a hearing on whether defendant consented to the disclosure of the taped messages by signing a consent form as a prerequisite to treatment. The State recognizes that, in granting a defense motion 
in
 
limine
, the trial court ruled out consent or waiver of the statutory privilege as a basis for admitting the messages into evidence. However, the State asserts that this ruling was erroneous because the defense motion applied only to "statements" and defendant's signature on the consent form was not a "statement."

The State's assertion comes too late.  At trial, the State did not raise this argument in opposition to defendant's motion 
in limine
.  Issues not raised at the trial level are waived on appeal. 
Western Casualty & Surety Co. v. Brochu
, 105 Ill. 2d 486, 500 (1985).  We decline to remand the cause to allow the State to reargue the consent issue.

We hold that the phone messages are communications protected by the Confidentiality Act and that the State has failed to prove that they are exempt from the statute's protections.  Therefore, the trial court erred in admitting the tape.  Given the importance the trial judge attached to the tape as evidence of defendant's guilt, we cannot say that the error was harmless.  Therefore, defendant's conviction cannot stand.

We must still decide whether defendant may be retried. Defendant argues that the evidence, including the taped messages, is insufficient to prove him guilty beyond a reasonable doubt.  As we have ruled that the taped messages are inadmissible, we need only consider whether the remaining evidence is sufficient.  We conclude that it is and that defendant may be retried.

In reviewing the sufficiency of the evidence, we ask only whether all the evidence, when considered in the light most favorable to the State, is sufficient to allow any rational fact finder to conclude that the elements of the offense have been proven beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  We defer to the fact finder's determinations of the witnesses' credibility, the weight to be given their testimony, and the reasonable inferences to be drawn from their testimony. 
People v. Steidl
, 142 Ill. 2d 204, 226 (1991).

As pertinent here, a person commits unlawful communication with a witness when, with the intent to deter the witness from testifying freely, fully, and truthfully to any matter pending in any court, he communicates directly or indirectly to the witness a threat of injury or damage to the property or person of any individual.  720 ILCS 5/32--4(b) (West 1998).  Defendant argues that his words to Kelly were too vague to amount to an imminent threat to Kelly's person or property and that there is no evidence that defendant intended to deter Kelly from testifying fully, freely, or truthfully in the probation revocation proceeding.

We believe that the evidence is sufficient to support a conviction of unlawful communication with a witness.  The State had to prove that defendant communicated a threat of injury; the statute does not require an "imminent threat."  We think that a rational fact finder could construe defendant's words, "you're going to get it, buddy," or "you're going to get it now, buddy," as a threat of injury to Kelly.

We agree with defendant that the words must be taken in their context.  Defendant spoke his words shortly before Kelly was to testify for the State in a proceeding to revoke defendant's probation; this was obviously a serious matter that could motivate defendant to threaten Kelly in order to influence his testimony. According to David Smith's testimony, defendant confronted Kelly at close range, pointed his finger only a few inches from Kelly's face, and spoke to him in a "threatening" way.  While defendant may be correct that the words "You're going to get it now, buddy" are not 
per
 
se
 threatening and might have an innocent meaning in some situations, a reasonable fact finder could conclude that, under the facts of this case, they were indeed a threat of injury.  Therefore, we believe the evidence is sufficient to convict defendant of unlawfully communicating with a witness.

Finally, defendant makes several cursory arguments that are supported by no pertinent authority.  These arguments are waived and we need not consider them.  See 177 Ill. 2d R. 341(e)(7); 
People v. Nakajima
, 294 Ill. App. 3d 809, 817-18 (1998).

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

BOWMAN, P.J., and COLWELL, J., concur.