THIRD DIVISION

March 24, 2004

No. 1-03-0404

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

COREY BRADDOCK, 

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

William P. O'Malley,

Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

Following a bench trial, the trial court convicted defendant Corey Braddock
 of solicitation of a sex act in violation of section 11-14.1(a) of the Illinois Criminal Code of 1961 (720 ILCS 5/11-14.1(a) (West 2002)) (Criminal Code) and sentenced him to six months' supervision.  
The court denied defendant's motion for a new trial and motion in arrest of judgment.  Defendant appeals the denial of his posttrial motions, arguing that his conviction should be reversed because (1) section 11-14.1(a) is unconstitutional because it is overbroad and vague; (2) he was not proven guilty beyond a reasonable doubt; and (3) a fatal variance existed between the evidence presented and the charges in the complaint.  We affirm
.

Background

Defendant, a City of Chicago police officer assigned to the Internal Affairs Division (IAD), was arrested
 on September 24, 2003, for offering Johanna Kramp, an undercover Chicago police officer working a prostitution sting investigation
, money in exchange for sex.  Defendant was charged with "solicitation for prostitution in that he 
approached the complainant and offered $50.00 U.S.C. in exchange for the performance of sexual intercourse
 in violation of 720 ILCS 5/11-15(a)(1)."
(footnote: 1)  
At trial, over defendant's objection, the court allowed the State to amend the complaint to 
allege that defendant "committed the offense of solicitation of a sex act in that he approached the complainant and offered $50.00 U.S.C. in exchange for the performance of sexual intercourse, an act of sexual penetration as defined in 720 ILCS 5/12-12(f) in violation of 720 Illinois Compiled Statutes 5/11-14.1(a)."  The court offered defendant a continuance in which to prepare his case given the amended complaint but defendant declined and elected to proceed to trial.
  

At trial, Officer Kramp testified that, at approximately 3:40 a.m. on September 24, 2003, she was in civilian clothes working as a decoy in the 900 block of West Belmont Avenue in Chicago.  She noticed the driver of a white Ford Explorer staring at her as he passed her three or four times at a reduced speed.  She identified defendant as the driver.  Defendant pulled his car into an alley, parked and got out of the car.  He approached Officer Kramp and asked her whether she was looking for a date.  She said she was and asked him what he was looking for.  He replied that he was looking for sex.  She understood "sex" to mean "an act of sexual penetration."  Officer Kramp then asked how much money defendant had and he responded by asking how much she charged.  When she said $30 or $40, he responded "fine, okay."

Officer Kramp told defendant to meet her at 3229 Wilton in his car.  Officer Kramp started walking through the alley to that location and defendant returned to his car.  As he was driving through the alley, defendant stopped Officer Kramp again.  Officer Kramp asked him whether he had the money and defendant told her not to worry about it, that he was a police officer and would not "fuck [her] around."  He showed Officer Kramp his police star, told her he was with IAD and he was "just looking to get his nut off."  From her experience working in plain clothes, Officer Kramp was familiar with the street terms used during the solicitation of prostitution and her only understanding of the term "get my nut off" was that it meant "an act that would cause him to ejaculate."

Officer Kramp asked defendant to show her the money.  He told her that he could go get money.  He asked her whether she was at least 17 years old and whether she had a condom.  When she replied that she was 23 and did have a condom, defendant left.  Officer Kramp radioed her backup officers and arranged for help should the transaction occur.  When defendant returned, she asked him again whether he had the money.  "He indicated that he did have the money, $50, and showed [her] some money."  Officer Kramp saw money in defendant's hand and told him to pull into a parking spot.  She then gave the prearranged signal to her backup officers indicating that the transaction was complete.  Defendant slowly drove past the parking spot but two backup officers in unmarked cars stopped him.  This was the last contact Officer Kramp had with defendant.  She wrote a summary of the events on the arrest report, stating that defendant asked for sex.  She explained that "sex" is the same terminology as "sexual intercourse".

Officer Ricardo Fernandez testified that he stopped defendant's car after he saw Officer Kramp give the signal.  During the patdown, defendant stated that he was a police officer and asked that he be given a break.  Officer Fernandez did not inventory defendant's wallet although that was standard procedure.

After the close of the State's case, defendant moved for a directed finding, arguing that the State failed to prove the elements of the amended complaint because there was no testimony that defendant solicited or that Officer Kramp agreed to perform "sexual intercourse" as specified in the complaint.  Defendant argued that the only testimony reference was to the generic term "sex," which could encompass a myriad of acts besides sexual penetration.  The court agreed that the complaint was very specific in its allegation that defendant solicited "sexual intercourse, an act of sexual penetration" but stated that Officer Kramp testified that she understood the word "sex" to mean an act of sexual penetration and denied the motion.

Defendant then testified.  He was driving home at 3:40 a.m. from an investigation location which he could not disclose
(footnote: 2) when he saw a girl who looked "pretty young" standing on the street.  He pulled over and asked whether he could help her with anything.  She asked him whether he was looking for a date and he said he was not and that he would like to help her.  He moved his car to Wilton at her behest.  He told the girl about opportunities to get off the street and about Sister-to-Sister, a program to which he referred women in need of help.  After she asked him again whether he was looking for a date, he told her that he was a police officer with IAD and terminated the conversation because she did not want help.  Defendant denied driving by Officer Kramp multiple times, asking for sex, saying he wanted to "get [his] nut off," asking her age or whether she had a condom.   

In rebuttal, Officer Kramp testified that defendant never told her about Sister-to-Sister, alternatives to working on the street or anything other than what she had related earlier.  

Following closing argument, the court stated that it found Officer Kramp credible and that the State proved defendant guilty beyond a reasonable doubt.  Defendant filed a motion for a new trial and a motion in arrest of judgment
.  The court denied the motions and sentenced defendant to six months supervision.  Defendant timely appeals the court's denial of his posttrial motions.

Analysis

Constitutionality of Statute

Defendant appeals the court's denial of his motion in arrest of judgment wherein he argued that (a) the statute is unconstitutionally overbroad and vague
 and (b)
 the complaint did not charge defendant with sufficient specificity to allow him to prepare his defense or to plead a resulting conviction as a bar to future prosecution arising from the same conduct.  On appeal, defendant argues only that the statute is unconstitutionally overbroad and vague
 and, therefore, void.  We review the constitutionality of a statute 
de novo
.  
People v. Hill
, 333 
Ill. App. 3d
 783, 785, 776 
N.E.2d
 828, 831 (2002).

Section 11-14.1(a) states:

"Any person who offers a person not his or her spouse any money, property, token, object, or article or anything of value to perform any act of sexual penetration as defined in Section 12-12 of this Code, or any touching or fondling of the sex organs of one person by another person for the purpose of sexual arousal or gratification, commits the offense of solicitation of a sexual act.
"  720 ILCS 5/11-14.1(a) (West 2002).

The doctrine of overbreadth only applies to invalidate a statute if the statute inhibits the exercise of rights of expression or association protected by the first amendment.  
Hill
, 333 
Ill. App. 3d
 at 786, 776 
N.E.2d
 at 831; 
People v. Bailey
, 167 
Ill. 2d
 210, 226, 657 
N.E.2d
 953, 961 (1995).  Freedom of speech
 is a basic first amendment right and, arguably, defendant should be free to communicate with any woman he chooses in any way he chooses, including, under defendant's scenario, offering her items of value in exchange for sex.  However, " '[w]here speech is an integral part of unlawful conduct, it has no constitutional protection.' "  
Bailey
, 167 
Ill. 2d
 at 227, 657 
N.E.2d
 at 961-62, quoting 
Chicago Real Estate Board v. City of Chicago
, 36 
Ill. 2d
 530, 552-53, 224 
N.E.2d
 793 (1967).  Our legislature has determined that offering money or items of value in exchange for sex is unlawful conduct.  720 ILCS 5/11-14.1(a) (West 2002).  Therefore, when defendant offered Officer Kramp $
50 in exchange for sex
, he was not engaged in a protected activity because he exercised 
his right to free speech in the commission of a criminal offense.  
See 
Hill
, 
333 
Ill. App. 3d
 at 787, 776 
N.E.2d
 at 832 (erotic dancing is expressive conduct protected by first amendment; however, erotic dancing involving dancer touching 
sexual organs of patron for money for purpose of patron's sexual arousal is not protected conduct because it falls within the specified strictures of section 11-14(a) (720 ILCS 5/11-14(a) (West 2002)).  The element of an offer of something of value is an integral part of the solicitation offense because the offense cannot occur without such an offer.  Therefore, the element of speech
 in the solicitation statute, the offer, is not constitutionally protected.  
Accordingly, no first amendment concerns are at issue here and the statute is not void for overbreadth.  See 
Bailey
, 167 Ill. 2d at 227, 657 N.E.2d at 961 (in context of stalking statute, court held that element of threat in the stalking statute is integral part of the offense; stalking offense cannot be committed without initiation of the threat and, therefore, this speech element of the statute is not constitutionally protected).  

Defendant also argues that the statute is unconstitutionally vague because it encompasses not only the offer of money but the offer of any valuable item in exchange for sex and that this would make a prostitute of any woman who agrees to sex in the context of a social situation.
  In order to survive a vagueness challenge, a criminal statute must (a) provide a person of ordinary intelligence with a reasonable opportunity to distinguish between lawful and unlawful conduct and (b) adequately define the offense to prevent arbitrary and discriminatory enforcement.  
Hill, 
333 Ill. App. 3d at 788, 776 N.E.2d at 833
.
  Where, as here, the statute does not implicate first amendment concerns, the challenging party must show that the statute is vague as applied to the conduct for which the party was prosecuted. 
 Hill, 
333 Ill. App. 3d at 788, 776 N.E.2d at 833; 
Bailey
, 167 Ill. 2d at 228, 657 N.E.2d at 962
.
  Accordingly, only the vagueness of the term "money" is at issue because it is for offering money in exchange for sex that defendant was prosecuted.  

The word "money" is not defined in the statute and we will, therefore, assume that the word has its "ordinary and popularly understood meanings."  
Bailey
, 167 Ill. 2d at 229, 657 N.E.2d at 962
.
  Giving the word "money" its plain and ordinary meaning, it is clear that "money" is in no way a vague term.  It can only be understood to mean currency of some type, such as the bills which defendant showed Officer Kramp.  A statute must convey "sufficiently definite warnings that can be understood when measured by common understanding and practices" and "impossible levels of specificity are not required."  
Bailey
, 167 Ill. 2d at 229, 657 N.E.2d at 963
.
  Here, the statute is not vague as applied to defendant's conduct, as alleged in the complaint, because it unambiguously prohibits that conduct by providing adequate and clearly understandable notice that the offer of money in exchange for sex is proscribed.  Although there may be cases in which some uncertainty exists as to a statute's applicability, that does not render the statute unconstitutional as to conduct about which no uncertainty exists.  
People v. Wilkenson
, 262 Ill. App. 3d 869, 875-76, 635 N.E.2d 463, 467 (1994), quoting 
People v. Vandiver
, 51 Ill. 2d 525, 530, 283 N.E.2d 681 (1971). Section 11-14.1(a) is neither overbroad nor vague as applied here and thus not unconstitutional. 

Defendant cites to 
People v. Johnson
, 60 Ill. App. 3d 183, 376 N.E.2d 381 (1978), in support of his argument that the statute is an unconstitutionally vague and 
overbroad attempt to regulate sexual conduct in general, including sexual acts resulting from ordinary social motives, such as a woman agreeing to sex in exchange for an expensive dinner or a date at a concert.  
In 
Johnson
, the defendant contested the constitutionality of the statute under which she was found guilty of prostitution for offering to perform a sex act for money
, arguing that it was an overbroad and vague attempt to 
regulate sexual conduct in general.  
The statute, section 11-14(a) of the Criminal Code, stated that "[a]ny person who performs, offers or agrees to perform any of the following acts for money commits the act of prostitution: * * * [a]ny act of sexual intercourse; or * * * [a]ny act of deviate sexual conduct."  Ill. Rev. Stat.1975, ch. 38, par. 11-14(a) (now 720 ILCS 5/11-14(a) (West 2002)
).  The 
Johnson
 court determined that the statute was specifically directed at a defined "evil," the performance or agreement to perform sex acts for money.  
Johnson
, 69 
Ill. App. 3d
 at 187, 376 
N.E.2d
 at 384.  Since the statute applied only to those who perform, offer or agree to perform sex acts for money, the court determined that the statute could not apply to sexual acts resulting from social situations
 and did not discourage "exchanges of sexual acts as a part of social companionship or for gifts of material goods."  The statute was, therefore, not overbroad or vague.

Based on 
Johnson
, defendant argues that, because the statute at issue here prohibits all types of consideration, not just money, it necessarily must be overbroad and vague because it makes a prostitute of any woman who offers, performs or agrees to perform sexual acts in exchange for an expensive dinner or concert.  We note, however, that the statute at issue here greatly differs in its focus from the statute at issue in 
Johnson
.  In 
Johnson
, the statute focused on the prostitute and her offer to sell sexual favors.  In contrast, the statute here focuses on the person on the other side of a sexual transaction, the prospective client and his or her offer to purchase sexual favors.  Contrary to defendant's assertions, the statute does not make a prostitute of someone receiving such an offer.  The statute focuses on the person making the offer, on the buyer and not the seller
.  Nor does the statute 
attempt to punish "mere conversation" or criminalize, to use defendant's example, a woman's request for an expensive gift in exchange for sexual favors.  Clearly, it is the "client's" offer to purchase a sex act which is illegal and the statute is entirely clear as to what constitutes such an offer.  

Lastly, because the statute does not implicate first amendment rights and because defendant's conduct clearly falls within the strictures of the statute, defendant has no standing to raise a facial challenge to the statute.  
Bailey
, 167 Ill. 2d at 231, 657 N.E.2d at 963
.  The court did not err in denying defendant's motion in arrest of judgment.

Reasonable Doubt

Defendant argues that he was not proven guilty beyond a reasonable doubt.  
When considering a challenge to the sufficiency of the evidence, we must determine, viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt.  
People v. Hall
, 194 
Ill. 2d
 305, 330, 743 
N.E.2d
 521, 536 (2000).
  D
efendant was charged with committing "the offense of solicitation of a sex act in that he approached the complainant and offered $50.00 U.S.C. in exchange for the performance of sexual intercourse, an act of sexual penetration as defined in 720 ILCS 5/12-12(f) in violation of 720 Illinois Compiled Statutes 5/11-14.1(a)."
  In order to commit the offense of solicitation of a sexual act
, defendant must be shown to have offered a person not his spouse money or something of value "to perform any act of sexual penetration as defined in Section 12-12 of this Code, or any touching or fondling of the sex organs of one person by another person for the purpose of sexual arousal or gratification."
(footnote: 3)  720 ILCS 5/11-14.1(a) (West 2002). Those elements are clearly shown here. 

Officer Kramp testified that defendant asked her for "sex," told her that he wanted to "get his nut off," requested her price for sex, agreed thereto, showed her the money and moved his car to the location she suggested.  Officer Kramp testified that she understood defendant to have solicited her for sexual intercourse because, in her experience, "sex" meant "an act of sexual penetration" and "get his nut off" meant "an act that would cause him to ejaculate."  The court stated that it found Officer Kramp credible and that, based on the credibility of the witnesses, it found defendant guilty beyond a reasonable doubt.  

Credibility of witnesses and assessment of their testimony and the inferences to be drawn therefrom are for the trier of fact to determine and we will not substitute our judgment for that of the trier of fact on those issues unless the evidence is so improbable as to justify reasonable doubt as to the defendant's guilt.  
People v. Mullen
, 313 Ill. App. 3d 718, 724, 730 N.E.2d 545, 551 (2000); 
People v. Slim
, 127
 
Ill. 2d
 
302, 307, 537 N.E.2d 317, 319 (1989).  The court was the trier of fact here.  The court believed Officer Kramp rather than defendant, reiterating its credibility determination during the hearing on defendant's posttrial motions and noting that it had considered defendant's demeanor and manner while testifying.  This credibility determination was for the court to make and not so improbable as to justify reasonable doubt as to defendant's guilt. 

Defendant cites to 
People v. Thoma
, 171 Ill. App. 3d 313, 525 N.E.2d 572 (1988), wherein the court found that the defendant took no substantial step toward the crime of attempted patronizing a prostitute where the defendant's conduct consisted only of speech.  
Thoma
 is inapposite.  In order to patronize a prostitute, one must actually have engaged in an act of sexual penetration with a prostitute or entered or remained in a place of prostitution with the intent to engage in such an act.  720 ILCS 5/11-18 (West 2002).  In contrast, the solicitation-of-a-sexual-act statute has no intent element and speech alone is, therefore, sufficient to determine whether the offense has been committed.  The offense here was complete when the salient words, an offer to purchase a sexual act for money, were spoken.  The court found that the offer was proven beyond a reasonable doubt and we will not substitute our judgment of disputed evidence for the trial court's
 where the court heard the evidence, observed the witnesses and arrived at a reasonable and plausible conclusion.  
Johnson
, 60 Ill. App. 3d at 191, 376 N.E.2d at 387.  

Fatal Variance
   

Defendant argues that a fatal variance existed between the charge that defendant solicited "sexual intercourse, an act of sexual penetration" and the proof at trial, asserting that there was no evidence that defendant specifically asked for sexual intercourse as charged in the indictment.  We disagree.  Granted that "sexual intercourse" and "sexual penetration" are not synonymous, sexual intercourse being only one of many forms of sexual penetration.  However, the commonly understood meaning of "sex" is sexual intercourse, and we do not find the fact that defendant used the word "sex" rather than "sexual intercourse" in his negotiation with Officer Kramp or Officer Kramp's failure to ask defendant exactly what sexual act would suffice to "get his nut off" fatal to the State's case.  Officer Kramp testified to her understanding, based on the words defendant used to solicit her, that he intended sexual intercourse/penetration/ejaculation.  Defendant's words must be taken in context (
People v. Gemeny
, 313 Ill. App. 3d 902, 913, 731 N.E.2d 844, 853 (2000)) and his subsequent questions to Officer Kramp regarding whether she had a condom and was more than 17 years of age reinforce that he intended sexual intercourse of some sort in exchange for the proffered money.  Given the court's credibility finding, we find the evidence supports the court's determination that defendant is guilty beyond a reasonable doubt and the court did not err in denying defendant's motion for a new trial.

Moreover, although "every material allegation in the indictment must be proved beyond a reasonable doubt" in order to convict a defendant, "an immaterial allegation need not be so proved.  An averment is material when it is essential to the crime or cause of action and cannot be stricken from the indictment or complaint without leaving it insufficient."  
People v. Taranto
, 2 Ill. 2d 476, 482, 119 N.E.2d 221 (1954).  Clearly the averment that defendant solicited sexual penetration is the essential element of the offense here.  If the phrase "sexual intercourse" were stricken from the complaint, the remaining language would still clearly state the required statutory elements.  The type of sexual penetration is entirely immaterial to the sufficiency of the charge and, therefore, the phrase "sexual intercourse" is mere surplusage and need not be proven.  As long as solicitation of sexual penetration of some sort is proven beyond a reasonable doubt, the proof conforms to the charge.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.

FOOTNOTES
1:  Section 11-15(a)(1) provides that any person who solicits another for the purpose of prostitution commits "soliciting for a prostitute."  720 ILCS 5/11-15(a)(1) (West 2002).  This section "covers only 'middlemen' who solicit customers for the prostitute and not the prospective customers or the prostitute" (
People v. Jones,
 245 Ill. App. 3d 810, 813, 615 N.E.2d 391, 393 (1993)) and was clearly the wrong section under which to charge defendant.

 

2:  During the sentencing hearing, the State was prepared to present the testimony of IAD Sergeant Koconis that there was no such investigation.

3: 
 Section 12-12(f) defines "sexual penetration" as 

"any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration.
"  720 ILCS 5/12-12(f) (West 2002).