# Illinois Official Reports

## Appellate Court

---

### *People v. Henderson*, 2019 IL App (4th) 170305

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELTON HENDERSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-17-0305 |
| Filed | March 6, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 15-CF-616; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brian Hiatt, of Bourbonnais, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Timothy J. Londrigan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Steigmann and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant, Elton Henderson, was convicted of unlawful possession of cocaine, unlawful possession of methamphetamine, unlawful possession of firearm ammunition by a felon, and unlawful communication with a witness. The trial court sentenced him to concurrent three-year prison terms for both drug-related offenses and the possession-of-firearm-ammunition offense. The court imposed a consecutive three-year prison term for the communication-with-a-witness offense. Defendant appeals, challenging only his conviction for unlawfully communicating with a witness. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    In April 2015, the State charged defendant with unlawful possession of firearm ammunition by a felon (count I) (720 ILCS 5/24-1.1(a) (West 2014)), unlawful possession with intent to deliver 1 to 15 grams of a substance containing cocaine (count II) (720 ILCS 570/401(c)(2) (West 2014)), and unlawful possession with intent to deliver 5 to 15 grams of a substance containing methamphetamine (count III) (720 ILCS 646/55(a)(2)(B) (West 2014)). The charges stemmed from the execution of a search warrant at defendant's residence in April 2015. The record reflects law enforcement officers obtained the search warrant after receiving information about defendant from a confidential source.

¶ 4    In May 2016, an attorney representing defendant filed with the trial court an affidavit signed by Jasmine Hines. In the affidavit, Hines asserted that in March 2015, she contacted the police with information that defendant possessed cocaine, marijuana, methamphetamine, a large amount of cash, and a 9-millimeter handgun at his residence. She also informed the police that she observed defendant conducting drug transactions and carrying a handgun. According to Hines, she "then placed in [defendant's] home" methamphetamine, rock cocaine, and ammunition for a handgun. Hines averred that she used to live at defendant's residence and had retained a key for the residence. She asserted defendant had no knowledge of the items she placed in his home and that she "told the police these events occurred" because she was upset with defendant. At the time the affidavit was filed, defendant's attorney represented that Hines would be called as a witness for the defense.

¶ 5    In July 2016, the State additionally charged defendant with the offense of unlawful communication with a witness (count IV) (720 ILCS 5/32-4(b) (West 2014)). It alleged that defendant offered Hines money "with the intent to deter *** Hines from testifying fully and truthfully to a matter pending in the Champaign County Circuit Court." In October 2016, the State added a fifth count against defendant, charging him with unlawful possession with intent to deliver less than five grams of a substance containing methamphetamine (count V) (720 ILCS 646/55(a)(2)(A) (West 2014)). The record reflects the State then moved to dismiss count III, alleging similar conduct but a different amount of methamphetamine possessed by defendant. The trial court granted the State's motion.

¶ 6    In February 2017, the case proceeded to a jury trial. The State presented evidence showing that an individual named Deondre Newbill provided information to law enforcement officers that resulted in a search warrant being executed at defendant's residence. During the search, the police located packages containing white substances, which were later identified as methamphetamine and cocaine, as well as firearm ammunition. The parties stipulated that defendant was a convicted felon at the time the search warrant was executed.

¶ 7    The State's evidence further showed that after it filed the drug-related and firearm-ammunition charges against defendant and before Newbill was disclosed as law enforcement's confidential source, defendant's counsel filed Hines's affidavit. Two law enforcement officers involved with the investigation of defendant and the execution of the search warrant—Officers Nick Krippel and Jack Turner—both testified that Hines was not the confidential informant who provided the information used to obtain the search warrant. Additionally, both asserted that at the time the search warrant was prepared and executed, neither officer was familiar with Hines.

¶ 8    Hines testified that defendant was her ex-boyfriend. The two dated and lived together from September 2014 until approximately February 2015. Around December 2015, Hines spoke on the phone with defendant, who asked her to go to his attorney's office because "he believed that [Hines] was a confidential informant in [his] case." According to Hines, defendant wanted her "to admit to [his attorney] that [she] placed [the drugs and ammunition] in his home." Hines testified that she told defendant she was not the confidential source but acknowledged that she went to his attorney's office as requested. She stated she was shown an affidavit that had been prepared prior to her arrival. Hines signed the affidavit because she did not want defendant to get in trouble. She was also worried "[a] little bit" about what defendant might do if she did not sign the affidavit because "he had it made up in his mind that [Hines had] set him up." Hines further testified that defendant offered her money to sign the affidavit. Specifically, defendant offered her $500 about "a day or so" before she went to his attorney's office. Hines stated defendant then paid her the $500 after they left the attorney's office.

¶ 9    Hines admitted that information contained in the affidavit was false. In particular, she testified she was not familiar with defendant having firearms or drugs in his possession and she did not provide any information about defendant to the police. Hines testified that she was not the confidential source for the police and she did not place drugs or ammunition in defendant's residence.

¶ 10    Relative to the offense of unlawful communication with a witness, the State presented the following closing argument to the jury:

> "To sustain the charge of communicating with a witness, the State must prove the following propositions: That the defendant first offered money to any individual, and that when he did so, *** Hines was a party or a witness in the matter pending before a court. And third, that when he did so, the defendant intended to deter *** Hines from testifying freely, fully and truthfully in a matter pending before a court.
>
> * * *
>
> And [Hines] comes in and she signs that affidavit, and at the moment she signs that affidavit, at the moment she signs it, the moment she says anything to [defendant's attorney] about it or to the defendant about it, she is a witness in this pending case, because that's exactly what he's creating here. He's trying to create a witness for himself to take the fall, and the moment she comes in and she says stuff like that, she becomes a witness in the case. *** And then having been incontrovertedly [*sic*] made a witness in this matter, *** defendant gives her five hundred dollars. He not only has offered it to her before but again after actually tenders it to her and she receives it. That's the offense of communication with a witness."

Ultimately, the jury found defendant guilty of the offense of unlawfully communicating with a witness. It also found him guilty of unlawfully possessing firearm ammunition. Finally, as to

the two drug-related offenses, the jury found defendant guilty of only the lesser included offense of possession.

¶ 11 In March 2017, defendant filed a motion for a judgment notwithstanding the verdict. Relevant to this appeal, he argued that the State failed to prove him guilty of the offense of unlawful communication with a witness because it failed to prove that Hines was a " 'witness' or party to his case" at the time she agreed to sign the affidavit. The same month, the trial court conducted a hearing in the matter and denied defendant's posttrial motion. It then proceeded with defendant's sentencing hearing. The court imposed concurrent sentences of three years' imprisonment for the offenses of unlawful possession of firearm ammunition by a felon, unlawful possession of cocaine, and unlawful possession of methamphetamine. It also imposed a sentence of three years' imprisonment for the offense of unlawful communication with a witness, which it ordered to run consecutively to defendant's other sentences.

¶ 12 This appeal followed.

¶ 13                              II. ANALYSIS

¶ 14 On appeal, defendant argues the State failed to prove him guilty of the offense of unlawful communication with a witness. Specifically, he contends the evidence presented failed to show that Hines was a "witness" when he "offered and paid her money." Defendant also contends that because Hines was not a witness or a party to the case when he offered her money, he could not have been shown to have had the intent to deter her from testifying truthfully.

¶ 15 "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. When presented with a challenge to the sufficiency of the evidence, a reviewing court must view the evidence presented in the light most favorable to the State and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *Id.* "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 16 Additionally, when construing a statute, the primary objective is to give effect to the legislature's intent. *People v. Casas*, 2017 IL 120797, ¶ 18, 104 N.E.3d 425. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* When terms in a statute are undefined, "[i]t is appropriate to employ the dictionary as a resource to ascertain [their] meaning." *People v. Cardamone*, 232 Ill. 2d 504, 513, 905 N.E.2d 806, 811-12 (2009). To the extent this appeal involves matters of statutory construction, our review is *de novo*. *People v. Hunter*, 2017 IL 121306, ¶ 15, 104 N.E.3d 358.

¶ 17 Section 32-4(b) of the Criminal Code of 2012 (720 ILCS 5/32-4(b) (West 2014)) sets forth the elements of the offense of unlawful communication with a witness, providing as follows:

> "A person who, with intent to deter any party or witness from testifying freely, fully and truthfully to any matter pending in any court *** forcibly detains such party or witness, or communicates, directly or indirectly, to such party or witness any knowingly false information or a threat of injury or damage to the property or person of any individual or offers or delivers or threatens to withhold money or another thing of value to any individual commits a Class 3 felony."

Thus, as charged in this case, a person unlawfully communicates with a witness when, with the intent to deter the witness from testifying freely, fully, and truthfully to any matter pending in court, he or she "offers or delivers" money to any individual.

¶ 18    Here, the State presented evidence showing defendant offered Hines $500 to sign an affidavit that indicated she was law enforcement's confidential source and that she planted drugs and ammunition in defendant's residence. Evidence further showed that after Hines signed the affidavit, defendant delivered the promised $500 to her. As stated, defendant contends the evidence failed to establish all the necessary elements of the unlawful-communication-with-a-witness offense because Hines was not a witness as contemplated by section 32-4(b). We disagree.

¶ 19    A witness is defined as "[s]omeone who sees, knows, or vouches for something" or "[s]omeone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." Black's Law Dictionary (10th ed. 2014). While Hines may not have been a "witness" to any pending legal matter when first approached by defendant regarding the affidavit, she certainly became a witness when she signed that affidavit and swore that she had information relevant to defendant's pending criminal charges. Once Hines signed the affidavit, defendant paid, or *delivered* to her, the promised $500. The delivery of money to any individual satisfies an element of the charged offense. 720 ILCS 5/32-4(b) (West 2014).

¶ 20    Finally, defendant's intent to deter Hines from testifying freely, fully, and truthfully can be inferred from the circumstances presented. *People v. Woodrum*, 223 Ill. 2d 286, 316, 860 N.E.2d 259, 279 (2006) ("Criminal intent is a state of mind that is usually inferred from the surrounding circumstances."). Specifically, a rational jury could have concluded from the evidence presented that by paying Hines $500, defendant intended that she would not later testify truthfully. In other words, she would continue to take responsibility for planting the items found in his residence as she stated in her affidavit and not divulge that she was induced to take responsibility for the offenses at issue with the promise of money. Accordingly, we find the record contains sufficient evidence to support each element of the unlawful-communication-with-a-witness offense.

¶ 21    Defendant argues that he could not "logically" have deterred Hines from testifying truthfully because she had no connection with his case when he approached her. However, as discussed, once Hines signed the affidavit, she became a witness with information relevant to defendant's criminal case and could be deterred from testifying freely, fully, and truthfully.

¶ 22    On appeal, defendant cites appellate court decisions that address either the unlawful-communication-with-a-witness offense or the greater offense of witness harassment. See *People v. Stuckey*, 2011 IL App (1st) 092535, 959 N.E.2d 740; *People v. Gemeny*, 313 Ill. App. 3d 902, 731 N.E.2d 844 (2000); *People v. Butler*, 375 Ill. App. 3d 269, 873 N.E.2d 480 (2007). He maintains that because these cases involve a defendant's communication with, or harassment of, a known witness, *i.e.*, an occurrence witness to charged criminal conduct (*Stuckey*), a witness subpoenaed to testify (*Gemeny*), or a complaining witness (*Butler*), they demonstrate the inapplicability of the unlawful-communication-with-a-witness offense to the factual circumstances of his case. Again, we disagree.

¶ 23    The cases cited by defendant do arise under different factual circumstances than presented here. However, they do not represent the only factual circumstances under which section 32-4(b) may be applied and do not preclude application of the statute to the facts presented by

this case. The cases defendant cites are simply not dispositive of the issue presented and do not warrant reversal of defendant's conviction.

¶ 24   Finally, defendant argues that the State charged him with "the wrong offense" and that it should have charged him, instead, with subornation of perjury, bribery, or obstruction of justice. As the State points out, however, a prosecutor has wide discretion in determining whether and how to charge a defendant. *People v. Perry*, 224 Ill. 2d 312, 339, 864 N.E.2d 196, 213 (2007) ("[T]he prosecutor has broad discretion in determining whether to charge an individual with a criminal offense and the nature of the offense to be charged."). Here, aside from the arguments already addressed and rejected, defendant has failed to make any reasoned argument suggesting the State was required to charge defendant with a different offense than the one at issue.

¶ 25                                III. CONCLUSION

¶ 26   For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal (55 ILCS 5/4-2002(a) (West 2016)).

¶ 27   Affirmed.